No. 24-50523

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

DAVID EDWARD GAUDETTE,

Plaintiff-Appellant


V.


ANGEL HEART HOSPICE, L.L.C., DOING BUSINESS AS
NEW CENTURY HOSPICE, INCORPORATED,

Defendant-Appellee

_____

On Appeal from the United States District Court for the
Western District of Texas, Austin Division Case No. 1:23-CV-769-RP

_____

## BRIEF OF APPELLANT

_____

Robert S. Notzon
LAW OFFICE OF ROBERT S. NOTZON
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
Robert@NotzonLaw.com
(512)-474-7563

_____

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

| Plaintiff - Appellee | Plaintiff – Appellant's Counsel |
|---|---|
| David Gaudette | Robert S. Notzon<br>LAW OFFICE OF ROBERT S. NOTZON |

| Defendants - Appellants | Defendants – Appellees' Counsel |
|---|---|
| Angel Heart Hospice, LLC, dba New Century Hospice, Inc. | Kevin S. Mullen<br>THE MULLEN FIRM PLLC<br><br>Sara E. Janes<br>WEISBART SPRINGERS HAYES, LLP |

 s/ *Robert Stephen Notzon*
Robert Stephen Notzon

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This matter involves, in part, the long-established standards associated with dismissals on the pleadings, which Gaudette respectfully asserts the District Court erred either in applying or failing to apply. If this were the only basis for this appeal, Gaudette would assume that oral argument would not be helpful to this Court. However, this matter also involves several issues related to the recent changes within employment law following the Supreme Court's decisions in *Bostock* and *Muldrow* and the Fifth Circuit decision in *Hamilton* which Gaudette cited and relied upon in this matter.

Gaudette's appeal asserts that these recent decisions should have played a significant role in this matter, but the District Court erred in failing to apply and discuss these holdings along with several other errors in the District Court's dismissal of Gaudette's entire case on the pleadings. As a result, Gaudette believes that oral argument would benefit the Court in its review of the issues presented in this appeal.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PARTIES** .................................. II

**STATEMENT REGARDING ORAL ARGUMENT** .......................... III

**TABLE OF CONTENTS** ...................................................... IV

**INDEX OF AUTHORITIES** ................................................. VI

**JURISDICTIONAL STATEMENT** ......................................... 1

**STATEMENT OF ISSUES** .................................................. 1

**STATEMENT OF FACTS** ................................................... 2

    PROCEDURAL HISTORY ................................................. 6

**SUMMARY OF ARGUMENT** ............................................... 7

**ARGUMENT** ............................................................... 8

**STANDARD OF REVIEW** .................................................. 8

    THE DISTRICT COURT ERRED BY DISMISSING GAUDETTE'S SEXUAL ORIENTATION DISCRIMINATION/DISPARATE TREATMENT CLAIM .............10

        A.  *Gaudette Pled Four Distinct Claims: Disparate Treatment Discrimination, Hostile Work Environment, Constructive Discharge, and Retaliation* ..............................................................10

        B.  *New Century Did Not Move for and the Report and Recommendation Did Not Address Dismissal of Gaudette's Disparate Treatment Claim* ..............................................................13

        C.  *Gaudette's Objections and Proposed First Amended Complaint Provided Sufficient Bases to Deny the Motion to Dismiss Gaudette's Disparate Treatment Sexual Orientation Discrimination Claim* .....14

        D.  *New Century's Response to Gaudette's Objections Fails to Support the Dismissal of Gaudette's Disparate Treatment Claim and Contradicts Precedents Establishing Lower Standards of Review* ...19

        E.  *The District Court's De Novo Review of the Dismissal of Gaudette's Disparate Treatment Claim Without a Reasoned Opinion*

*Was Limited to One Footnote and Failed to Address Gaudette's Objections* ..........................................................................*20*

THE DISTRICT COURT ERRED BY DISMISSING GAUDETTE'S HOSTILE WORK ENVIRONMENT CLAIM BY USING A CONSTRICTED VIEW INSTEAD OF THE REQUIRED "TOTALITY OF THE CIRCUMSTANCES" STANDARD AND BY NOT APPLYING THE HOLDING IN *MULDROW* .................................................26

    *A.   The District Court Erred by Not Applying The "Totality of the Circumstances" in It's Limited De Novo Review* ..............................*27*

    *B.   The District Court Erred by Not Applying The Holding in Muldrow to Gaudette's Hostile Work Environment Claim* ..............*35*

THE DISTRICT COURT ERRED BY DISMISSING GAUDETTE'S CONSTRUCTIVE DISCHARGE CLAIM BY USING A CONSTRICTED VIEW INSTEAD OF THE REQUIRED "TOTALITY OF THE CIRCUMSTANCES" STANDARD AND BY NOT APPLYING THE REASONING IN *MULDROW* ...............................................41

    *A.   The District Court Erred by Not Applying The "Totality of the Circumstances" Standard in It's Limited De Novo Review.* ............*42*

    *B.   The District Court Erred by Not Applying The Reasoning in Muldrow to Gaudette's Constructive Discharge Claim.* ...................*49*

THE DISTRICT COURT ERRED IN DISMISSING GAUDETTE'S RETALIATION CLAIM BY RELYING UPON INAPPLICABLE CASE LAW AND BY FAILING TO APPLY THE FACTUALLY BASED STANDARD OF DETERMINING WHETHER GAUDETTE ADEQUATELY PLED THAT NEW CENTURY'S *QUID PRO QUO* THREAT WOULD HAVE DISSUADED A REASONABLE EMPLOYEE FROM ENGAGING IN PROTECTED ACTIVITY .......................................................52

**CONCLUSION** .................................................................... **54**

# INDEX OF AUTHORITIES

### CASES

*Abbt v. City of Houston*, 28 F.4th 601, 609 (5th Cir. 2022) ------------------ 45

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ------------------------------------------------------------------------ 9

*Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) --- 49

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2008) ------------------------------------------------------------ 9

*Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) ----------------- 49

*Brumback v. Callas Contractors*, 913 F. Supp. 929, 939 (D. Md. 1995) 48

*Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53, 68 (2006) ----2, 38, 54

***Cicalese v. Univ. of Tex. Med. Branch***, **924 F.3d 762, 767 (5th Cir. 2019)** ---------------------------------------------------------------- 21, 25, 26

***Cooper v. Federal Reserve Bank of Richmond***, **467 U.S. 867, 875– 76 (1984)** ------------------------------------------------------------ 21, 23, 24

*Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2018) ------------------ 10

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ----- 9

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ----------- 33, 37

*Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003) -------------------------------------------------------------------------------- 37

*Great Lakes Dredge & Dock Co., LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) --------------------------------------------------------------- 10

*Hamilton v. Dall. Cty.*, 79 F.4th 494 (5th Cir. 2023) ----------------- passim

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ------------------ passim

*Hirase-Doi v. U.S. West. Commc'ns., Inc.*, 61 F.3d 777, 782-83 (10th Cir. 1995) ----------------------------------------------------------------------- 45

*Kumar v. Panera Bread Co.*, No. 23-20178, 2024 U.S. App. LEXIS 6780 (5th Cir. 2024) ---------------------------------------------------------------- 9

*Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 167 (5th Cir. 2007) ---------------------------------------------------------------------- 49

*Liberti v. Walt Disney World Co.*, 912 F. Supp. 1494, 1505 (M.D. Fla. 1995) ----------------------------------------------------------------------- 45

*Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) ------------------ 9

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) ------- 13, 33, 36

*Muldrow v. City of St. Louis*, 144 S. Ct. 341 (2023) ------------------ passim

*Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 677 (5th Cir. 2021) 48, 49

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ------ 28

*Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004) ----------------------- 43

*Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) ---------------------------------------------------------------- passim

*Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005) ----------- 34

*Teamster* v. *United States*, 431 U.S. 324, 336 (1977) ----------------------- 24

*Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) ----------------------- 48

## S<small>TATUTES</small>

28 U.S.C. §1291 ------------------------------------------------------------------ 1

28 U.S.C. §1331 ------------------------------------------------------------------ 1

28 U.S.C. §1343 ------------------------------------------------------------------ 1

Title VII ----------------------------------------------------------------------- passim

## R<small>ULES</small>

F.R.C.P. 12 ------------------------------------------------------------------------ 1

F.R.C.P. 12(b)(6) ----------------------------------------------------------------- 9

F.R.C.P. 12(c) --------------------------------------------------------------------- 9

F.R.C.P. 15(a)(2) ---------------------------------------------------------------- 15

FRAP 4(1)(A) --------------------------------------------------------------------- 1

## JURISDICTIONAL STATEMENT

This Court's jurisdiction arises under 28 U.S.C. §1291 (appeal from a final decision of District Court of the United States – granting a motion to dismiss under F.R.C.P. 12). The District Court's jurisdiction arose under 28 U.S.C. §1331 (federal question), under 28 U.S.C. §1343 (civil rights).

Gaudette timely perfected this appeal by filing his Notice of Appeal on June 26, 2024 [ROA.399.RE2.], within thirty (30) days of the district clerk's May 29, 2024, entry of a Final Judgment disposing of all parties' claims. ROA. 398.RE3. FRAP 4(1)(A).

## STATEMENT OF ISSUES

1. Whether the District Court erred in dismissing Gaudette's Disparate Treatment Sexual Orientation Discrimination claim on the pleadings by failing to recognize it as a separately pled claim and failing to apply the "some harm" standard from *Muldrow* that replaced the former measured harm test?

2. Whether the District Court erred in dismissing Gaudette's Hostile Work Environment claim on the pleadings by analyzing the claim from a constricted view of the pleadings instead of from the required broad view of a "totality of the circumstances" standard and by failing to apply the reasoning from *Muldrow*?

3. Whether the District Court erred in dismissing Gaudette's Constructive Discharge claim on the pleadings by also refusing to apply the required broad view "totality of the circumstances" standard of review and by failing to apply the reasoning from *Muldrow*?

4. Whether the District Court erred by dismissing Gaudette's Retaliation claim on the pleadings by relying upon inapplicable case law and by failing to apply the factually based *Burlington Northern* standard of determining whether Gaudette's pleading of a *quid pro quo* threat by New Century against his Nursing license coming only two weeks after Gaudette's protected activity would have "dissuaded a reasonable employee from engaging in protected activity"?

## **STATEMENT OF FACTS**[1]

New Century hired Gaudette in approximately August 2017 as a hospice Registered Nurse. New Century was aware that Gaudette had significant experience as a registered nurse since approximately 2005. ROA.332.RE7.

New Century recognized that Gaudette was a strong employee who provided compassionate, thoughtful, and caring services to New Century's clients. *Id.* New Century gave Gaudette positive performance evaluations, and he regularly received compliments on his performance from patients, family, coworkers, and management. *Id.*

Gaudette worked for four years as a Licensed Hospice Registered Nurse for New Century before he learned that his sexual orientation were a source of derisive humor for his co-workers and that his employer would not protect him from discriminatory misconduct. ROA.8. Prior to that day, Gaudette believed that he had worked in a

---

[1] Gaudette did **not** plead or argue sexual harassment or sexual misconduct claims.

mutually respectful and professional environment with his co-workers and management. *Id.*

Gaudette's co-workers disappointed him by not providing the same professional respect as he showed them. Gaudette dealt with such ignorance and mistreatment for most of his life. Therefore, Gaudette was equipped to cope with such mistreatment. However, Gaudette never expected that he would need to work in that environment without protection or the truth from his employer. ROA.338.RE7.

That is, Gaudette also learned that his supervisor, Godby, did nothing to follow or enforce New Century's policies against the discriminatory misconduct that Godby had personally witnessed and that Godby and his manager agreed to intentionally and falsely deny that the discriminatory comment and derisive laughter had occurred. ROA.338-39.RE7.

New Century denied Gaudette protection from discriminatory and harassing behavior from both Gaudette's co-workers and management representatives. New Century (as represented by Gaudette's supervisor, manager, and regional manager) had no legal reason to deny Gaudette the same terms and conditions of employment that the other employees would enjoy if they were subjected to such discriminatory mistreatment (i.e., enforcement of the anti-discrimination and anti-retaliation policies, the right and ability to complain of discrimination, and benefit from New Century conducting faithful investigations when discriminatory incidents are observed or reported) just because Gaudette did not act like a stereotypical heterosexual male. ROA.338-344.RE7

New Century made it impossible for Gaudette (and the gay co-worker who also quit) to remain employed by New Century as factually alleged by Gaudette supporting all of his claims against New Century in this case as part of the totality of the circumstances within Gaudette's pleadings:

- Co-workers denying Gaudette his manhood, ROA.335.RE7.
- Co-workers' derisive laughter at Gaudette's expense, *Id.*
- New Century's refusal to enforce policies against such discriminatory comments and laughter (to include conducting an investigation, disciplining employees for violations, and communicating the unacceptability of such conduct to the employees, including to Gaudette), ROA.335-36.RE7.
- Three different co-workers, who were present in that meeting, confirmed to Gaudette that the discriminatory comment and derisive laughter had occurred at Gaudette's expense and no one did anything about it, ROA.339.RE7.
- New Century denying Gaudette the truth about what had occurred, ROA.337-38, 340-41.RE7.
- New Century enlisting other employees to deny that any discriminatory incidents had occurred, ROA.341-42.RE7. and
- New Century thus removing any semblance that Gaudette would be working in anything other than a pervasive unprofessional environment of discriminatory and derisive mistreatment and assured that he would be denied the terms and conditions of his employment including policy protections available to other employees and, perhaps most insidiously, a denial of the truth; the inability for Gaudette to be able to trust and rely on his employer for true and accurate communications regarding his employment. ROA.342-43.RE7.

As a result, both Gaudette and the gay co-worker chose to resign rather than continue to work under such a disparate, pervasive, and severe hostile work environment.

Gaudette submitted his resignation via email, which included in part:

> "… I … had to hear from a virtual stranger that my coworkers, … openly mock and laugh at me for those very same things when I am not around. **I'll never know who laughed and who didn't and therefore will never be able to look at any of you in the same way.** … My resignation is effective immediately. …." **Emphasis added** <mark>ROA.341</mark>.RE7.

Approximately two weeks later, after the concerted efforts of multiple management and co-workers – trying to get Gaudette to believe their lies that the discriminatory harassment had not occurred – had failed and Gaudette was continuing to refuse to withdraw his resignation, New Century sent Gaudette a letter that contained:

- A thinly veiled *quid pro quo* threat that New Century would report Gaudette to the Texas Board of Nurses based on a false allegation of a HIPAA violation,
- An overt reminder that the penalties for a HIPAA violation "can be severe," and
- A mention of New Century's desire to "peacefully coexist" with Gaudette. <mark>ROA.343</mark>.RE7.

The *quid pro quo* threat can only be reconciled with New Century's desire to "peacefully coexist," by Gaudette giving something up, too. That is, New Century would refrain from making its Nursing Board HIPAA violation report if Gaudette would refrain from taking some action, too. Gaudette's only complaint against New Century at that or any time was Gaudette's complaint of sexual orientation discrimination against New Century. *Id.*

Gaudette pled that such a *quid pro quo* threat from New Century (that New Century admitted in its threat letter involved severe consequences) was designed by New Century to dissuade Gaudette from pursuing his complaint of discrimination. *Id.*

## Procedural History

Gaudette filed his original complaint in this litigation on July 7, 2023. ROA.7-19. Gaudette served the summons for Defendants Angel Heart Hospice, LLC, dba New Century Hospice, Inc. ("New Century") on July 14, 2023. ROA.24-27. New Century filed it Answer on August 2, 2023. ROA.28.

New Century filed its F.R.C.P. 12(c) motion to dismiss on February 19, 2024. ROA.50-67.

The District Court referred the motion to the United States Magistrate for report and recommendation on March 7, 2024. (Text Order, no document associated with this order). The Report and Recommendation was filed on April 10, 2024. ROA.253-270.RE5. Gaudette filed a motion for leave to file his second proposed First Amended Complaint on May 15, 2024. ROA.326-349. Gaudette timely filed his Objections on May 15, 2024. ROA.350-371.RE6. New Century filed a response to Gaudette's motion for leave to file his second proposed First Amended Compliant on May 18, 2024. ROA.372-378. Gaudette filed his reply in support of leave to file his First Amended Complaint on May 24, 2024. ROA379-385. New Century filed its response opposing Gaudette's Objections on May 28, 2024. ROA.386-378.

On May 29, 2024, the District Court Adopted the Report and Recommendation and Denied Gaudette's motion for leave to file his second proposed First Amended Complaint. ROA.395-397.RE4.

The District Court issued its Final Judgment on May 29, 2024. ROA.398

Gaudette timely filed his notice of appeal to this Court, less than 39 days later, on June 26, 2024. ROA.399.

## SUMMARY OF ARGUMENT

Appellant Gaudette was the victim of discriminatory ridicule by a group of Gaudette's fellow professionals in the presence of New Century management because of Gaudette's sexual orientation. Had this mistreatment/misconduct ended there, a lawsuit and appeal would have not been filed or necessary.

Instead, as Gaudette pled, his employer, New Century, witnessed the discriminatory attack against Gaudette, decided to take no action to remediate it, and then New Century's upper management made the environment disparate, hostile, and intolerable by:

1) Denying that the discriminatory comments and laughter ever occurred,
2) Pressuring a co-worker, who complained of discrimination and false denial, to quit,
3) Convincing several co-workers and management representatives to also lie to Gaudette by falsely denying that the discriminatory misconduct had occurred, and
4) Threatening Gaudette with the loss of his Nursing License after Gaudette rejected the lies.

These actions by New Century management confirmed for Gaudette the intolerable severe and pervasive hostile work environment in which Gaudette would have had to work had he not resigned.

Gaudette pled these allegations in support of four distinct and viable causes of action: 1) disparate treatment discrimination, 2) hostile work environment, 3) constructive discharge, and 4) retaliation.

Gaudette respectfully asserts that his pleadings (proposed First Amended Complaint ROA.331-348.RE7.) would not only the meet the new and lower standard established by *Muldrow* and *Hamilton*, but would also have met the higher standards that *Muldrow* and *Hamilton* overturned/reversed.

Gaudette respectfully asserts that the District Court erred in dismissing all four of these claims by alternatively:

- failing to apply existing pleading standards,
- failing to view the pleadings broadly within a "totality of the circumstances,"
- failing to apply the decisions and reasoning in *Muldrow* and *Hamilton* to Gaudette's disparate treatment claim, and
- failing to reconcile the reasoning in *Muldrow* and *Hamilton* to Gaudette's hostile work environment and constructive discharge claims.

Gaudette respectfully requests that this Court reverse the dismissals of each and all four of his claims and remand each and all four of them to the District Court to proceed through discovery.

## ARGUMENT

## STANDARD OF REVIEW

On appeal, a District Court's grant of a motion to dismiss is reviewed *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Kumar v. Panera Bread Co.*, No. 23-20178, 2024 U.S. App. LEXIS 6780 (5th Cir. 2024) (citing to *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018), which quoted *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). A complaint survives a motion to dismiss under F.R.C.P. 12(b)(6) only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2008). Similarly, F.R.C.P. 12(c) motions are subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2018). This standard is plaintiff friendly. *Great Lakes Dredge & Dock Co., LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (stating that the Court must "accept all well-pleaded facts as true and construe the compliant in the light most favorable to the plaintiff."). Even so, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Gaudette relies only on legitimate factual allegations and reasonable inferences as are appropriate at this stage.

### The District Court Erred by Dismissing Gaudette's Sexual Orientation Discrimination/Disparate Treatment Claim

Gaudette pled a separate and distinct claim for disparate treatment sexual orientation discrimination. Gaudette respectfully asserts that the District Court erred in its *de novo* review of the Report and Recommendation by failing to acknowledge Gaudette's distinct claim and failing to grant Gaudette's motion for leave to file his second proposed First Amended Complaint (ROA.331-348.RE7.), especially in light of the recent *Muldrow* and *Hamilton* decisions.[2]

### A.   Gaudette Pled Four Distinct Claims: Disparate Treatment Discrimination, Hostile Work Environment, Constructive Discharge, and Retaliation

Gaudette pled a distinct claim for Disparate Treatment Discrimination in his Original Complaint, as follows:

- "alleges **disparate treatment** based on gender discrimination," ROA.7.
- "Gaudette filed his charge of **gender discrimination**," *Id.*
- "direct evidence of discriminatory intent," ROA.9.
- "… pursue his claims of **gender-based discrimination**, hostile work environment, and constructive discharge against New Century." ROA.11. and
- "As a result of New Century's **gender-based discriminatory actions**, hostile work environment, constructive discharge, and retaliatory actions against Gaudette, …." *Id.* (**emphases added**)

Gaudette's second proposed First Amended Complaint contained similar references as mentioned above,[3] but Gaudette also included the

---

[2] *Muldrow v. City of St. Louis*, 144 S. Ct. 341 (2023) and *Hamilton v. Dall. Cty.*, 79 F.4th 494 (5th Cir. 2023)

[3] As can be found at ROA.331, 335-36, 337.RE7.

following more and explicit statements of his Disparate Treatment Discrimination claim:

- "…, the pressuring of Mr. Gaudette's gay coworker to resign, … the blatant and offensive **sexual orientation discrimination**." ROA.339-40.RE7.
- "…no one at New Century conducted any investigation of the … **sexual orientation discrimination** …, including investigating whether other examples of blatant **sexual orientation discrimination** had previously occurred …." ROA.340.RE7.
- "no one at New Century took any action whatsoever to address the **sexual orientation discrimination** towards Mr. Gaudette or to protect him … and prevent such discrimination from happening in the future." *Id.*
- "53. Not being able to trust your employer to tell the truth and protect you from outrageous **discrimination is a baseline term, condition, and privilege of employment that an employee should readily expect and receive from their employer**." ROA.342.RE7.
- "58. As a result of New Century's **gender-based discriminatory actions**, hostile work environment, constructive discharge, and retaliatory actions, Mr. Gaudette suffered and continues to suffer …" ROA.343.RE7.
- "63. Defendant New Century violated Title VII by discriminating against Mr. Gaudette because of his sex/ sexual orientation, including **subjecting him to disparate treatment in the terms, conditions, or privileges of his employment**." ROA.344.RE7. (**emphases added**)

Although Gaudette maintains that his Original Complaint sufficiently pled his four distinct causes of action, to include the disparate treatment discrimination claim, Gaudette respectfully requests that this Court consider his second proposed First Amended

Complaint (ROA.331-348.RE7.) as the pleading upon which this Court conducts its *de novo* review of the issues in this appeal.[4]

---

[4] From here on in the Appellant's Brief, Gaudette will only refer to this version of his First Amended Complaint. ROA.331-348.RE7.

### B.    New Century Did Not Move for and the Report and Recommendation Did Not Address Dismissal of Gaudette's Disparate Treatment Claim

New Century only moved to dismiss three of Gaudette's four causes of action: Hostile Work Environment, Constructive Discharge, and Retaliation. ROA.50-67. New Century misstated that Gaudette's Complaint only pled "a hostile work environment, constructive discharge, and retaliation case." *Id.*

New Century made one reference to "[u]nlawful sex discrimination" in fn5 (ROA.54.) in an attempt to assert that "[a] *non-quid pro quo* sex or gender discrimination claim is a claim for a hostile work environment." Citing to *Meritor*.

However, New Century's assertion has no bearing on this case because, there are no sexual harassment claims in this case and *Meritor*, in that context, was only discussing sexual harassment claims involving sexual misconduct and not gender-based discrimination claims, that is at issue in this case.

The District Court followed New Century's lead by only analyzing the three claims that were the sole foci of New Century's motion to dismiss on the pleadings. ROA.50-67 The District Court misstated that, "Gaudette filed this suit, alleging that he was the victim of a hostile work environment and was constructively discharged and retaliated against for speaking out against the discrimination in violation of Title VII." ROA.255.RE5.

The District Court erred by ignoring Gaudette's pleadings, even though the motion and Order were supposed to be solely based upon Gaudette's pleadings.

### C.    Gaudette's Objections and Proposed First Amended Complaint Provided Sufficient Bases to Deny the Motion to Dismiss Gaudette's Disparate Treatment Sexual Orientation Discrimination Claim

Gaudette's Objection went beyond pointing out that both the defendant and the Court failed to address his disparate treatment claim, by providing additional factual and legal argument and analysis to support the denial of the motion to dismiss Gaudette's disparate treatment sexual orientation discrimination claim. ROA.368-370.RE6.

Specifically, Gaudette placed New Century and the District Court on notice through Gaudette's Objections that, "*Hamilton* eliminated the 'ultimate employment action' requirement for adverse discriminatory actions, 79 F.4th at 497, and that *Muldrow* had ended a need to show a 'significant harm requirement' for certain pleaded adverse actions." 144 S. Ct. at 975. ROA.369.RE6.

Gaudette also pointed out that *Muldrow* recognized that the text of Title VII does not include the heightened burdens like New Century would have this Court apply. Instead, *Muldrow* held that, "discriminate against" refers to "differences in treatment that injure" employees. Terms or conditions is not used "in the narrow contractual sense," it covers more than the "economic or tangible." 144 S. Ct. at 974. To plead a case, a plaintiff "must show some harm respecting an

identifiable term or condition [or privilege] of employment" without also having to show that the harm was "significant," or "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." 144 S. Ct. at 970.

Gaudette also pointed out to New Century and the District Court that *Hamilton* held that use of the broad language of "term, condition, or privilege of employment" in the statute "evinces a congressional intent to strike at the entire spectrum of disparate treatment of [protected and unprotected] employees in employment." 79 F.4th at 501. And that any "benefits that comprise the incidents of employment, or that form an aspect of the relationship between the employer and employees," the Court explained, falls within Title VII's ban on discrimination. 79 F.4th at 501-502.

Gaudette respectfully requests that this Court consider his proposed First Amended Complaint (ROA.331-348.RE7.) regarding whether Gaudette has met his pleading standard because Gaudette respectfully asserts that the District Court erred in denying Gaudette's motion to amend as being "futile" even though the District Court accurately ruled that F.R.C.P. 15(a)(2) requires the Court to "freely grant leave to amend when justice so requires (ROA.396.RE4.) and Gaudette's proposed First Amended Complaint (ROA.331-348.RE7.) exceeds the pleading requirement showing that New Century disparately mistreated Gaudette in the denial of multiple terms, conditions, and privileges of employment to Gaudette because of Gaudette's sexual orientation and conduct outside of the norm for heterosexual men as pled (ROA.331-348.RE7.) and argued. ROA.368-370.RE6.

15

In line with the holdings in *Muldrow* and *Hamilton* regarding the broad scope of the phrase "terms, conditions, and privileges of employment" in the statute, Gaudette specifically listed the following "identifiable 'terms, conditions, or privileges of employment,' or benefits and understandings between employees and employers," as having been denied to Gaudette "because of his sexual orientation":

- "denial of managerial protection from discriminatory misconduct against Gaudette, ROA.370.RE6.
- denial of equal application of policies that are supposed to protect all employees from discrimination, *Id.*
- denial of equal access to investigations that are supposed to follow complaints of discrimination in the workplace, *Id.*
- denial of truthful communications from the employer and management representatives regarding matters in the work place to include discriminatory comments made in the workplace about Gaudette, *Id.*
- knowingly pressuring a separate co-worker to resign after he had complained about discriminatory misconduct against Gaudette, *Id.*
- knowingly pressuring coworkers to lie to Gaudette that no discriminatory misconduct occurred against Gaudette, *Id.*
- subjecting Gaudette to false allegations of a HIPAA violation and a *quid pro quo* threat against Gaudette's nursing license through a report to the Nursing Board that the employer knew was not a HIPAA violation implying that New Century could "peacefully coexist" if Gaudette did not move forward with his complaint against New Century, *Id.* and
- denying Gaudette the understanding and confidence that his employer will protect him and tell him the truth as an employee every day moving forward." *Id.*

Gaudette's proposed First Amended Complaint also goes into substantial detail regarding the harm that Gaudette suffered because of

New Century's denial of these above-listed "terms, conditions, or privileges of employment,' to include:

- Statistical information for judicial notice of the impact of ridicule and harassment on homosexual men, like Gaudette. ROA.333.RE7.
- Gaudette's pre-employment history of being mocked and bullied for his sexual orientation and mannerisms outside the norm for heterosexual males. ROA.333-34.RE7.
- Gaudette's reaction to and the harmful impact he experienced as a result of learning of the discriminatory comments and derisive laughter from his co-workers. ROA.338-39.RE7.
- Gaudette's reaction to and the harmful impact he experienced as a result of learning that his supervisor and employer denied him access to this list of denied "terms, conditions, and privileges of employment." ROA.339-47.RE7.

Gaudette's disparate treatment discrimination claim is distinct from his three other claims and meets the pleading standards under both *Muldrow* and *Hamilton* and this Court's *de novo* review of a denial on the pleadings.

Regardless of whether this Court reverses and remands Gaudette's three other claims (hostile work environment, constructive discharge, and retaliation), Gaudette has a viable claim of disparate treatment to pursue in District Court seeking a jury trial to redress the harms caused by New Century against Gaudette. As held in both *Muldrow* and *Hamilton* there is no requirement that Gaudette show economic damages to maintain a disparate treatment claim. 144 S.Ct. at 974 and 79 F.4th at 501.

Additionally, Gaudette would add that although he has pled multiple "terms, conditions, and privileges of employment" that New Century

has denied him in this case, there is no need or requirement that Gaudette have done so, since *Muldrow* and *Hamilton* have eliminated the significance or measured test.

Gaudette will further argue, below, that there is no reason that when considering the "totality of the circumstances" during a *de novo* review of a hostile work environment and constructive discharge claim that this Court be restricted to only allegations of harassment instead of also including allegations of New Century's management's denial of multiple "terms, conditions, and privileges of employment," that would justify a reasonable employee removing himself from such a discriminatorily hostile work environment. That is, employees that are targets of discrimination in the workplace from their co-workers and their employer should not have to put up with either the harassment from their co-workers or their employer's denial of those "terms, conditions, and privileges of employment" that render their employment intolerable to a reasonable employee – a quintessential fact question for a jury to decide.

### D.   New Century's Response to Gaudette's Objections Fails to Support the Dismissal of Gaudette's Disparate Treatment Claim and Contradicts Precedents Establishing Lower Standards of Review

New Century attempted to respond to Gaudette's Objections to the dismissal of his disparate treatment discrimination claim. ROA.391-92. However, New Century's effort failed.

New Century admitted that it did not move against Gaudette's disparate treatment claim by failing to provide any response to Gaudette's assertion; to include burying New Century's response within its response to Gaudette's constructive discharge claim section without a separate disparate treatment section heading or other designation. ROA.391-92.

New Century makes the assertion that Gaudette "elevates labels over substance" without any relevant or specific analysis of this otherwise meaningless soundbite. ROA.391.

New Century then cites to *Harris v. Forklift Sys., Inc.*, which is a hostile work environment case that, of course, discusses a hostile work environment standard of review – "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[5] That is, New Century did not cite to a disparate treatment discrimination claim case. ROA.391. Therefore, this argument by New Century is inapplicable to Gaudette's disparate treatment pleading and argument. *Id.*

---

[5] Quoting from *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)

Lastly, New Century then misstated that there are no Fifth Circuit cases that hold that a "disparate treatment" claim carries a "*lower standard* than the standard needed to establish an actionable hostile work environment" without any legal support for such a seemingly critical legal statement. ROA.392.

New Century's unsupported legal assertion directly contradicts the holding in *Hamilton*. And New Century has no justification for such a blatantly contradictory legal assertion, since New Century was responding to Gaudette's Objections, which specifically cited to and argued that both of the recent Fifth Circuit and Supreme Court cases, *Hamilton* and *Muldrow*, established lower standards of review for disparate treatment claims; as discussed above. ROA.368-370.RE6.

New Century made no mention of these cases in its response. ROA.386-394.

As a result, New Century's response in opposition to Gaudette's Objections failed to rebut Gaudette's arguments against dismissing Gaudette's disparate treatment claim.

### E.    The District Court's *De Novo* Review of the Dismissal of Gaudette's Disparate Treatment Claim Without a Reasoned Opinion Was Limited to One Footnote and Failed to Address Gaudette's Objections

Gaudette respectfully asserts that the District Court erred in its *de novo* review of Gaudette's Objections related to Gaudette's disparate treatment claim. The District Court limited its address of Gaudette's Objections related to his disparate treatment claim to one footnote

without citing to or discussing either *Muldrow* or *Hamilton* and in the process contradicting the holdings in both *Muldrow* and *Hamilton*.

Given the limited nature of the District Court's *de novo* review of Gaudette's objections to the dismissal of his disparate treatment claim, Gaudette reproduces the footnote here, in its entirety:

> "[1]In his objections, Plaintiff faults the magistrate judge for failing to consider "disparate treatment" claims. In his complaint, **it is far from clear that Plaintiff alleges any separate disparate treatment claim**. (See Compl., Dkt. 1). Nor did Defendant waive its right to contest this claim—it explicitly asked for "judgment on the pleadings and dismissal of all of [Plaintiff's] claims." (Mot. J. Pleadings, Dkt. 13, at 13). **For the same reasons the magistrate judge found Plaintiff's hostile work environment, retaliation, and constructive discharge claims lacking, the Court finds that any disparate treatment claim is similarly deficient. Plaintiff's disparate treatment claim is factually identical to his other claims, which all fail to allege a violation of Title VII. See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875–76 (1984) ("Proving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case . . . ."). Further, Plaintiff's disparate treatment claim is mooted by his admission that he left his job voluntarily, combined with the [Court's] finding that he was not constructively discharged. See *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) ("[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of [his] protected status.") (cleaned up)."** ROA.397.RE4.

Gaudette shall address each the District Court's errors in its *de novo* review by listing each asserted error (**bolded**) from the Order's fn1 followed by Gaudette's arguments supporting each assertion of error:

- "**it is far from clear that Plaintiff alleges any separate disparate treatment claim.**" *Id.*

The District Court only referenced Gaudette's Original Complaint and not his proposed First Amended Complaint (ROA.331-348.RE7).

The District Court did not provide a reasoned opinion for why it only reviewed the Original Complaint and did not consider Gaudette's proposed First Amended Complaint, which both contained allegations forming specific and distinct disparate treatment claims and therefore would not support a finding of being a "futile" amended pleading.

Even considering all three of Gaudette's Complaints (Original, first, and second proposed First Amended Complaints), all three of his Complaints made multiple references to Gaudette's disparate treatment discrimination allegations (i.e., distinct from the hostile work environment, constructive discharge, and retaliation claims).

Given the distinct and substantial additions to the allegations for Gaudette's disparate treatment sexual orientation discrimination claims contained in his proposed First Amended Complaint (ROA.331-348.RE7.), the District Court's assertion that a separate disparate treatment claim is "far from clear" is facially unsupportable.

Additionally, the District Court's finding that the proposed First Amended Complaint would be "futile" in the body of the Order Adopting the Report and Recommendation was based upon that naked assertion without any *de novo* review or legal analysis that, "Plaintiff's Proposed Amended Complaint does not cure his pleading deficiencies and once again fails to state a plausible claim for relief under Title VII." That is, the District Court could not simply point to or rely on the reasoning

22

within the Report and Recommendation on this point, since the proposed First Amended Complaint was not filed until the time of Gaudette's Objections. ROA.253-270.RE5. *Cf.* ROA.331-348.RE7

Gaudette respectfully asserts that such an absence of review and a contradiction with the record pleadings would support this Court reversing and remanding Gaudette's disparate treatment claim to proceed through to the discovery process.

- "**For the same reasons the magistrate judge found Plaintiff's hostile work environment, retaliation, and constructive discharge claims lacking, the Court finds that any disparate treatment claim is similarly deficient. Plaintiff's disparate treatment claim is factually identical to his other claims, which all fail to allege a violation of Title VII. See *Harris* (…); *Cooper* (…)**"

The absence of any analysis of *Muldrow* and *Hamilton* responding to Gaudette's timely Objection entitling Gaudette to the District Court's *de novo* review establishes error.

Given the holdings in *Muldrow* and *Hamilton* eliminating "significance tests," without any language regarding "severe or pervasive," and without any language regarding "dissuading," the "same reasons used to dismiss Gaudette's hostile work environment, constructive discharge, and retaliation claims cannot be used to review, analyze, or dismiss Gaudette's disparate treatment claims.

The District Court's reliance on *Harris v. Forklift Sys.* is also error since as discussed, above, that is a hostile work environment case and plays no role in reviewing a disparate treatment claim and it does not comply with the holdings in *Muldrow* and *Hamilton*.

The District Court's reliance on *Cooper v. Federal Reserve Bank of Richmond* also supports a finding of error since that is a class action case and the parenthetical phrase quoted by the District Court leaves off the remainder of the sentence following the ellipses identifying *Cooper* as a pattern or practice case – "…of a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that 'racial discrimination was the company's standard operating procedure -- the regular rather than the unusual practice.' *Teamster* v. *United States*, 431 U.S. 324, 336 (1977)" *Cooper* has a much higher and different standard and has nothing to do with any of Gaudette's four claims.

Gaudette's disparate treatment claim is not "factually identical to his other claims." In fact, a review of the disparate treatment allegations listed above, shows that the allegations relate to New Century's actions and not the co-workers solely.

Also, as mentioned above, there is no restriction in the case law to including denials of "terms, conditions, and privileges of employment" in a "totality of the circumstances" review for a hostile work environment claim. In other words, all allegations supporting Gaudette's disparate treatment claim are included in Gaudette's hostile work environment and constructive claims, but the reverse is not the case.

Lastly, there is not restriction on the use of the same or similar pled facts to support multiple claims. Therefore, the District Court's criticism forms no legal basis to support the dismissal of Gaudette's disparate treatment claim.

- "**Further, Plaintiff's disparate treatment claim is mooted by his admission that he left his job voluntarily, combined with the [Court's] finding that he was not constructively discharged. See *Cicalese* (...)**"

There is no case law support for the District Court's holding that Gaudette's "claim is mooted by his admission that he left his job voluntarily" and there is no legal basis to support this holding. As argued above, and held within both *Muldrow* and *Hamilton*, there is no requirement to establish economic harm to establish a disparate treatment claim and therefore the harm suffered by Gaudette as pled existed prior to his separation from New Century and continues to exist regardless of the separation, therefore his separation, whether voluntary or in constructive discharge, does not change the actionability of his disparate treatment claim that Gaudette suffered prior to the separation.

The District Court's cite to *Cicalese* does not impact Gaudette's disparate treatment claim because, Gaudette need only establish the denial of a "term, condition, or privilege of employment" as his adverse action, and the second element is established in his pleadings by the reference to his sexual orientation and mannerisms in the discriminatory comment and derisive laughter and then the denials of the "terms, conditions, and privileges of employment" following in very close proximity: within one day and a couple of weeks later at the most.

Therefore, Gaudette respectfully asserts that the District Court erred in failing to grant Gaudette's motion for leave to amend (with his proposed First Amended Complaint – ROA.331-348.RE7.), and also

erred in dismissing Gaudette's disparate treatment claims without having provided a reasoned opinion addressing Gaudette's Objections (ROA.350-371.RE6.) and without having applied the new *Muldrow* and *Hamilton* holdings that substantially lowered the pleading and evidentiary standard specifically for disparate treatment discrimination claims based upon a facial reading of the statute and an elimination of heightened burdens to meet the pleading standard as set out in Title VII.

### The District Court Erred by Dismissing Gaudette's Hostile Work Environment Claim by Using a Constricted View Instead of the Required "Totality of the Circumstances" Standard And By Not Applying the Holding in *Muldrow*

Gaudette has primarily two major assertions of error regarding the dismissal of his hostile work environment claim on the pleadings: 1) the District Court's[6] restriction of its *de novo* review of Gaudette's claim to the Report and Recommendation rather than using the "totality of the circumstances" standard, which is meant to broaden consideration of the pled circumstances and reasonable inferences and their impacts on the work environment, and 2) the District Court's use of a heightened burden that Gaudette argues contradicts the reasoning in both *Muldrow* and *Hamilton*. Gaudette respectfully asserts that Gaudette's

---

[6] Gaudette focuses on the District Court, rather than the Report and Recommendation, since the District Court announced that it completely relied on the Report and Recommendation without addressing any of Gaudette's Objections related to his Hostile Work Environment claim. ROA.396.RE4.

pleadings meet both the old heightened standard and the lower standard from *Muldrow* and *Hamilton*.

Regardless of the standard that this Court applies, Gaudette respectfully requests that this Court reverse the dismissal of Gaudette's hostile work environment claim at this pleading stage and remand it to the District Court to proceed through discovery.[7]

### A.    The District Court Erred by Not Applying The "Totality of the Circumstances" in It's Limited *De Novo* Review

The District Court's *de novo* review of New Century's motion for judgment on the pleadings regarding Gaudette's hostile work environment claim only adopted the reasoning of the Report and Recommendation without any additional reasoning provided in response to or addressing Gaudette's Objections related to his hostile work environment claim.[8] Gaudette respectfully asserts that such an absence of evidence of a *de novo* review from the District Court, to include a total absence of response to any of the substantive legal issues raised by Gaudette in his Objections regarding his hostile work

---

[7] Gaudette respectfully requests that this Court review and consider Gaudette's Objections (ROA.350-371.RE6.), because it provides a strong presentation of his case and pleadings and also provides a detailed and substantive legal challenge to the errors involved in the dismissals of his claims.

[8] As discussed above, Gaudette asserts that the District Court also erred by denying Gaudette's motion for leave to file his proposed First Amended Complaint due to the unexplained finding in the Order of "futility." ROA.396.RE4. Gaudette respectfully requests that this Court reverse that order and hold that Gaudette's proposed First Amended Complaint (ROA.331-348.RE7.) is Gaudette's live pleading on remand of this case to the District Court.

environment claim (ROA.350-371.RE6.), are indicative of, if not sufficient to find, error on these dismissals.

As challenged in the Objections, the Report and Recommendation improperly cited to and relied upon *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (ROA.258.RE5.), which was a same-sex sexual harassment case involving facts and circumstances such as sexual touching and sexual advances, which have nothing to do with Gaudette's claims in this case and in contrast would provide a misleading comparison with Gaudette's claims and circumstances, especially in the context of creating a potentially even higher bar to reach than is actually required of Gaudette under either the heightened standard for non-sexual harassment discrimination cases or the new lower standard under *Muldrow* and *Hamilton*. *Oncale* is further distinguished from Gaudette's case given that the employer was only involved in failing to remediate the harassment, instead of also participating in exacerbating and increasing the hostile work environment by its additional actions and inactions as alleged in this case that were not involved in *Oncale*.

More critically, the District Court acknowledged the requirement to review Gaudette's claims within a "totality of the circumstances" (ROA.259.RE5.), but then the District Court ignored Gaudette's multiple allegations directly implicating New Century management's actions and inactions (distinct from the co-workers') as increasing the hostility of the work environment rather than remediating the discriminatorily harassing conduct against Gaudette due to his sexual orientation.

Specifically, the District Court only considered the following three allegations as comprising the "totality of circumstances" in support of Gaudette's hostile work environment claim:

- "disrespectful comments" from two co-workers during a staff meeting related to Gaudette's gender being other than male,
- Other co-workers' "disrespectful enjoyment and laughter" in response to the comments, and
- [Supervisor's] failure to speak out or act against those comments and laughter. ROA.260.RE5.

After listing these three allegations, the District Court then immediately pronounced that "they do not rise to level of a hostile work environment." In support of this blanket pronouncement, the District Court cites to the extremely high and inapplicable burden from *Harris v. Forklift Sys., Inc.* (*Id.*) including an additional blanket pronouncement that Gaudette's "allegations are not 'of a character or kind of conduct' that rises to the level of actionable harassment" without citing to any source of the quote or other authority or explaining why it relies on a sexual harassment case instead of a sex/gender discrimination case.

Gaudette objects to the District Court refusing to recognize the remainder of the "totality of the circumstances" that Gaudette pled in this case in further support that his working environment was and would be hostile and intolerable had he remained employed, including:

- Godby, the Supervisor, was present in the meeting, personally observed the discriminatory comment and laughter, ROA.335.RE7.
- By not speaking out Godby indicated that New Century adopted that discriminatory conduct, ROA.336.RE7.

- Godby visually acknowledged his understanding of the discriminatory nature of the comment and laughter to the gay co-worker present in the meeting, but still said and did nothing, ROA.336.RE7.
- The next day, Godby verbally acknowledged the discriminatory comment and laughter to the gay co-worker by representing that the situation was being looked into, ROA.337.RE7.
- During that same meeting, Godby reversed himself after meeting with Godby's supervisor – higher member of management – for a few minutes by telling the gay co-worker, that he did not hear anything negative about Gaudette the day before, ROA.337.RE7.
- The gay co-worker objected to Godby and Godby responded in retaliation that the gay co-worker was not a good fit for New Century, pressuring the gay co-worker to resign, ROA.337.RE7.
- The gay co-worker immediately resigned, ROA.337-38.RE7.
- The gay co-worker contacted Gaudette telling him everything that happened the day before in the meeting and that day with Godby and Godby's manager, ROA.338.RE7.
- Learning of the discriminatory and derogatory comment, laughter, failure to take action against such misconduct directed at Gaudette, and New Century's decision to lie and deny that the discriminatory misconduct had occurred, resulted in Gaudette being devastated and at a loss for anything he could do to overcome the hostile work environment created as a result of New Century's actions and inactions as a result of his sexual orientation and most specifically New Century's denial of the truth that the discriminatory events had occurred, ROA.338-39.RE7.
- Gaudette conferred with two other co-workers that attended that meeting and they both confirmed that the discriminatory comments and derisive laughter had occurred and that no one had spoken out against it, ROA.339.RE7.
- Gaudette resigned because he could not continue to work with and for individuals who did not respect him, would not speak out against harassment, and would lie about it so that he would not ever be able to trust or know who did what and who did not, and that he would never be able to work knowing that he would not

be protected from any future attack against him, ROA.340-42.RE7.

- New Century then reached out to multiple co-workers and a regional supervisor then began texting Gaudette trying to get Gaudette to withdraw his resignation by continuing the lie that nothing had happened during the meeting and that the gay co-worker was the person that was lying and not Godby, New Century, and the others, ROA.341.RE7.
- Instead of working to remediate the discriminatory comment and laughter and failure to speak out against that conduct, New Century did not investigate, ROA.339-41.RE7.
- New Century did not discipline anyone, ROA.340.RE7.
- New Century did not apologize, ROA.339-40,342.RE7.
- New Century did not communicate broadly with all employees involved and Gaudette that such conduct is unacceptable and would not be tolerated. ROA.340,342.RE7.
- Gaudette alleged on information and belief that such discriminatory conduct was commonplace and accepted at New Century, ROA.343.RE7.

Gaudette provided a particularly helpful legal analysis in his Objections that distinguished the cases relied upon by the Report and Recommendation and, in contrast, Gaudette also cited to other cases that are relevant to and support his claims. See specifically, ROA.360-364.RE6.

Neither the Report and Recommendation nor the District Court have any excuse for ignoring the remainder of Gaudette's pled allegations. The Report and Recommendation cited to three paragraphs from Gaudette's Original Complaint (ROA.259.RE5. (citing to ROA.9-10. Specifically (¶¶11,13,16)), but it appears to have intentionally truncated Gaudette's allegation given the fact that Gaudette's very next three paragraphs (ROA.10-11. Specifically (¶¶17-19)) start with, "**To make**

**matters worse and thus solidify the continued and irremediable existence of a hostile work environment** for Gaudette …" (ROA.10. **emphasis added**) and continued on with additional allegations supporting his hostile work environment claim. Therefore, without exception or justification, the District Court had no business excluding those pleadings from the required "totality of the circumstances" consideration, yet the District Court did just that: excluding those additional three paragraphs. *Id.*[9]

There is no legal reason to only consider the harassing conduct of co-workers in a hostile work environment case when attempting to determine whether the hostility established against the plaintiff is sufficient for the Court to find that the employer has violated the plaintiff's "terms, conditions, and privileges of employment," which is the main purpose of the exercise as devised by and held in tests listed in *Meritor*, *Harris v. Forklift Sys., Inc.*, *Faragher*,[10] and their progeny.[11]

The common denominator among these tests for hostile work environment claims is, at its base, ensuring that the employer has reasonable notice of the harassment or hostile work environment. If it had, then the inquiry continues with whether the employer had an

---

[9] These additional allegations that the the District Court erred in ignoring were further developed and pled in Gaudette's proposed First Amended Complaint, as cited to above. ROA.331-348.RE7

[10] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

[11] All included language devising heightened gatekeeper tests to "qualify" as violations of the "terms, conditions, and privileges of employment" portion of Title VII meant to be protected from transgressions by employers. 477 U.S. at 65-67, 510 U.S. at 21, and 524 U.S. at 788, respectively. These cases also specifically involved extensive discussions of appropriate and inappropriate limitations on employer liability based upon notice and lack thereof. *Id.*

opportunity to and did or did not remediate the hostile environment, in order for the Court to find it reasonable to hold the employer accountable for the harm caused by the hostile work environment. *Id.*

Of course, if the employer engaged in or compounded the discriminatory hostility and violations of the "terms, conditions, and privileges of employment" against the plaintiff, then management accountability would be established without the need for the test used to link employer knowledge of co-worker misconduct. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) (citing to *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005)) (finding that a hostile work environment claim must show that (1) he belongs to a protected class; (2) he experienced harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) **the employer knew or should have known of the harassment and failed to take remedial action**.) (**emphasis added**)

It is interesting to note that these elements as set out in *Saketkoo* and *Septimus* do not include a heightened burden or test and the harassment is not required to be from a co-worker, thus allowing for consideration of harassment and other violations of the plaintiff's "terms, conditions, and privileges of employment" by employers and their management representatives, like as pled in this case.

The heightened tests (i.e., "sufficiently severe or pervasive," "create an abusive work environment," "physically threatening or humiliating," "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment")

would be reasonable to apply in reviewing a hostile work environment claim, when there is no allegation that the employer was on notice of or participated in the harassment/hostility in keeping with the precedents of *Meritor, Harris v. Forklift Sys., and Faragher*.

However, there is no need for such heightened tests when employer management is alleged to be aware of or even involved in the hostility and violations of the "terms, conditions, and privileges of employment" against the plaintiff, in light of *Muldrow*, and aligning *Muldrow* with *Meritor*, et al. Additional argument on this point may be found in the next section, below.

Alternatively, should this Court not find that the lower standard established in *Muldrow* should be applied in hostile work environment claims where the employer is both on notice of the harassment and refused to remediate it, thus establishing that the "terms, conditions, and privileges of employment" were harmed by the employer, without a heightened harm standard, Gaudette asserts that this Court could still find that Gaudette has met the old heightened tests for gender discrimination cases. That is, Gaudette pled sufficient allegations to establish each of the required elements of his hostile work environment claim and that New Century management was aware of and participated in compounding the hostile work environment by its intentionally false denial of the occurrence of the discriminatory conduct, its adoption of the discriminatory harassment through its refusal to remediate the discriminatory conduct, and its recruitment of Gaudette's co-workers to join in the gaslighting denials.

Gaudette asserts that his pleadings also allege that New Century will not protect Gaudette from, will not remediate, and will not eliminate the discriminatory behaviors nor the hostile work environment. New Century's management representatives assured Gaudette that his work environment, looking forward, would have been nothing, if not hostile.

Gaudette respectfully requests that the dismissal of his hostile work environment claim be reversed and that it be remanded to the District Court to proceed through discovery.

### B.    The District Court Erred by Not Applying The Holding in *Muldrow* to Gaudette's Hostile Work Environment Claim

Courts have variously created and maintained high, and extremely high, burdens on plaintiffs pursuing claims for hostile work environment under Title VII, not unlike the very high burdens that had been created for disparate treatment claims (e.g., "ultimate employment action") that had no statutory language supporting them, as was recently pointed out and eliminated in *Muldrow* and *Hamilton*.

In analyzing a hostile work environment claim, the existing heightened tests include: "[w]hen the workplace is **permeated** with 'discriminatory **intimidation, ridicule, and insult**,' … Title VII is violated,"[12] "harassment must be **sufficiently severe or pervasive** …

---

[12] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor*, 477 U.S. at 65-67)

to create an **abusive** work environment,"[13] "isolated incidents (**unless extremely serious**) will not amount to discriminatory changes in the 'terms and conditions of employment,'"[14] "[t]he legal standard for workplace harassment in this circuit is '**high**.'"[15] (**emphases added**)

As discussed in the preceding section, though, these heightened burden tests are only required and employed in those cases requiring the determination of whether the employer was on notice of the harassment/hostility and did nothing to remediate it, such that the harassment/hostility denied the plaintiff qualifies as a denial of one of the "terms, conditions, and privileges of employment." This phrase from Title VII's statutory language, that plays such a significant role in hostile work environment claims, is the very same language that was under review in the *Muldrow* and *Hamilton* cases in analyzing disparate treatment claims.

*Muldrow* and *Hamilton* found that Title VII does not have statutory language that requires heightened tests to allow protections for plaintiffs who plead disparate denials of their "terms, conditions, or privileges of employment." Although those holdings were made in relation to the disparate treatment discrimination complaints that were before those Courts, there is no reason that that same analysis should not be conducted with respect to a hostile work environment claim.

That is, as argued above, hostile work environment claims, also seek relief from a violation of the same statutory language of violations of the

---

[13] *Id.*, and *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022)

[14] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

[15] *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003)

plaintiff's "terms, conditions, and privileges of employment" due to their protected status, just like in *Muldrow* and *Hamilton*.

Gaudette's hostile work environment claim seeks relief due to New Century's violation of his "terms, conditions, and privileges of employment" due to his sexual orientation because of the harassment directed at him and, more particularly, New Century management's adoption and compounding of that harassment/hostility through New Century's observation and knowledge of that sexual orientation harassment, New Century's refusals to take any action to address, investigate, repudiate, eliminate, or remediate the harassment/hostility, and perhaps worst of all – New Century's conscious decisions to lie about the existence of the harassment.

In *Muldrow*, the employer sought to import the heightened standard for retaliation claims into the analysis of disparate treatment claims. However, the Supreme Court rejected the argument explaining, by citing to its holding in the *Burlington Northern v. White* case, that the heightened standard for establishing an adverse action in a retaliation claim exists because:

> "The test was meant to capture those employer actions serious enough to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." [*Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53, 68 (2006)] An action causing less serious harm will not deter Title VII enforcement and so falls outside the purposes of the ban on retaliation. But that reasoning does not apply to the anti-discrimination provision, which flatly "prevent[s] injury to individuals based on" protected status, *id.,* at 63, 126 S. Ct. 2405, 165 L. Ed. 2d 345, without distinguishing between significant and less significant harms."

As argued in the preceding section, hostile work environment and constructive discharge claims do not have a reasonable claim to a heightened standard like a retaliation claim in the statute, except when the harassment/hostility comes only from the co-worker(s) and lower-level supervisors and the employer is not alleged to have "[known] or should have known of the harassment and failed to take remedial action." *Saketkoo* 31 F.4th at 1003.

In this case, New Century was on notice of the sexual orientation discriminatory misconduct from the point it happened since Supervisor Godby was present and later admitted to having witnessed it at its inception. Then New Century's upper-level manager was notified about the harassment directed at Gaudette and then began compounding the hostility by falsely denying the existence of the discriminatory harassment and refusing to take any action to remediate it, thus violating Gaudette's "terms, conditions, and privileges of employment" in multiple ways, as listed above.

Because New Century's actions and inactions in this case violate Gaudette's "terms, conditions, and privileges of employment," because of his sexual orientation, Gaudette need not go through a heightened standard to show those violations establish a claim for hostile work environment against New Century because New Century, itself, engaged in the creation and exacerbation of a hostile work environment and not just the co-workers.

Had Gaudette not plead that New Century was aware of and engaged in creating and exacerbating the hostile work environment in conjunction with the sexual orientation discriminatory harassment, it

would be consistent with the precedents that a pleading should not be allowed to proceed unless there are allegations that the employer was on notice of the harassment/hostility and either made it worse or did nothing to remediate it, as held in *Saketkoo*.

Gaudette respectfully requests that this Court find in hostile work environment claims, that the only reason why a heightened standard should be applied to a hostile work environment claim is to show that the employer knew or should have known about the harassment/hostility and did nothing to remediate it.

Gaudette respectfully supports this request by arguing that the alternative, as it currently exists, places an intolerable burden on plaintiffs that neither Title VII's statutory language, nor common decency, calls for nor tolerates.

That is, the way hostile work environment claims are being adjudicated currently, despite the fact that employers are involved in or fully aware of harassment/hostility against plaintiffs in the workplace, plaintiffs are currently required to suffer unnecessarily heightened harms within that hostile work environment until they can meet some unspecified "significant," "substantial," "extreme," or other overly onerous standard of harm on the plaintiff to be determined by some unknown court at the time that the plaintiff is working in a hostile work environment regardless of the employer's knowledge or participation. That is simply unjust, outside of Title VII's statutory language, and contrary to the legal reasoning in *Muldrow* and *Hamilton*.

Because *Muldrow* found that Title VII does not require such a heightened significance test pleading when the allegation identifies that the employer itself has violated the employee's "terms, conditions, and privileges of employment," for a discriminatory reason, plaintiffs should be able to file suit with confidence that their claims will at least be allowed to proceed through discovery, if not on to trial, to be decided by a jury of their peers.[16]

Gaudette respectfully argues that such a holding in this case would reconcile this Court's hostile work environment jurisprudence with *Muldrow* and therefore stop making employees suffer unnecessarily extreme incidents of harassment and hostility in order to enjoy the same "terms, conditions, and privileges of employment" that all employees should enjoy, just as Title VII intended and intends.

In the alternative to reconciling *Muldrow* at this point, since this case is still in the pleadings stage, Gaudette would respectfully request that this Court reverse the dismissal of Gaudette's hostile work

---

[16] A recent District Court opinion, *Preciado v. Recon Sec. Corp.*, 2024 U.S. Dist. LEXIS 70565, 2024 WL 1628416 (W.D. Tex., Apr. 11, 2024), attempted to distinguish this sexual harassment case from *Muldrow* and *Hamilton*. Because Gaudette's case is not a sexual harassment case, *Preciado* is not relevant to this case. Should this Court hold otherwise, Gaudette objects to *Preciado*'s holding that *Hamilton* does not apply to it because "sexual harassment claims do not require … an adverse action." That holding is unsupported given the elements listed in *Preciado* include the same element as in *Saketkoo*, which requires that, "harassment affected a term, condition, or privilege of employment," which is the adverse action component in both *Muldrow* and *Hamilton*. As for *Muldrow*, *Preciado*, rejected the holding in *Muldrow* and applied the severe or pervasive standard because the case before it was not a transfer case, which is not a relevant distinction. In short, *Preciado* does not preclude the application of both *Muldrow* and *Hamilton* to this case related to Gaudette's hostile work environment and constructive discharge claims.

environment claim (as well as the rest of his claims for that matter) and remand it/them to allow Gaudette and New Century to develop the factual record and then should either party desire, this case might return to this Court with a developed evidentiary record sufficient to more fully address the reconciliation of this Court's hostile work environment jurisprudence with *Muldrow* and *Hamilton*.

### The District Court Erred by Dismissing Gaudette's Constructive Discharge Claim by Using a Constricted View Instead of the Required "Totality of the Circumstances" Standard And By Not Applying the Reasoning in *Muldrow*

Gaudette relies on the allegations contained in the preceding hostile work environment claim section to support Gaudette's allegation that he was left with no other reasonable option than resignation due to the extensive violations of his "terms, conditions, and privileges of employment" by New Century management because of his sexual orientation. Specifically, Gaudette alleged that New Century engaged in an extensive compounding of the sexual orientation harassment through its actions and inactions with knowledge by upper management of the harassment to include taking no action to remediate the harassment, pressuring another gay employee to quit that had complained about the discriminatory comment and laughter against Gaudette, management's refusal to address the discriminatory harassment, and management's decision to lie by falsely denying that the discriminatory harassment had occurred as witnessed by both the

gay co-worker and the supervisor only the day before immediately after the supervisor met with upper management.

### A.    The District Court Erred by Not Applying The "Totality of the Circumstances" Standard in It's Limited De Novo Review.

As stated above, Gaudette incorporates by reference the preceding hostile work environment section to establish the same allegations in support of both claims because Gaudette asserts that he has pled sufficient allegations in support of his hostile work environment claim that they collectively meet both the hostile work environment and constructive discharge pleading standards.

The current constructive discharge standard requires that the plaintiff plead "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)

Similar to the hostile work environment claim, the District Court, did not consider all of Gaudette's pled allegations, although it did expand its consideration to the two paragraphs (ROA.263.RE5. (citing to ROA.10-11. Specifically, (¶¶17-18)) following the three paragraphs to which it restricted its consideration for the hostile work environment claim. ROA.259.RE5. (citing to ROA.9-10. Specifically, (¶¶11,13,16))

The District Court provided no explanation for why it failed to also consider ¶19, which included additional inactions by New Century compounding the hostile work environment and Gaudette's impetus to resign in constructive discharge. NOA.11. Additionally, the District

Court failed to provide any explanation for why it refused to consider the extensive additional pleadings contained in Gaudette's proposed First Amended Complaint (ROA.331-348.RE7.), which extensively expanded those pleadings and has been listed and argued in detail in this brief, above.

Despite this fact, the District Court made the holding that Gaudette's proposed First Amended Complaint (ROA.331-348.RE7.) would have been "futile" without providing a reasoned opinion explaining the basis of this holding. ROA.396.RE4.

Gaudette respectfully requests that this Court determine such an action (or inaction) by the District Court to be in error such that this Court hold Gaudette's proposed First Amended Complaint (ROA.331-348.RE7.) to be Gaudette's current live pleading for purposes of this Court's *de novo* review and also upon remand of this case.

In his proposed First Amended Complaint (ROA.331-348.RE7.), Gaudette pled that his working conditions were, and would be indefinitely into the future, so intolerable that Gaudette felt compelled to resign. NOA.341.RE7. Following Gaudette's resignation, New Century doubled down on its compounding of the hostile work environment against Gaudette by trying to get Gaudette to withdraw his resignation by:

> "directing multiple employees to contact Gaudette, tell Gaudette that nothing had happened …, and that he should remain employed by New Century. However, these communications … were contradicted by … three other co-workers." ROA.341.RE7.

Gaudette's proposed First Amended Complaint then goes on to plead the intolerability of remaining employed by New Century in the next five paragraphs. ROA.342-43.RE7.(¶¶52-56)   Such detailed factual allegations regarding the harm that New Century's actions were causing in Gaudette are particularly ill-suited to dismissal as a matter of law and should be reserved for a jury to decide, not a judge (or at the very least allowed to be developed through discovery). *Abbt v. City of Houston*, 28 F.4th 601, 609 (5th Cir. 2022) (citing to citing with approval *Hirase-Doi v. U.S. West. Commc'ns., Inc.*, 61 F.3d 777, 782-83 (10th Cir. 1995); *Liberti v. Walt Disney World Co.*, 912 F. Supp. 1494, 1505 (M.D. Fla. 1995) ("The extent of [the victims' knowledge] of [the harassing] activities and how this knowledge affected their perception of their working environments at different times is a question of fact.").

The District Court concluded with the following finding of fact, without having considered or explained the legal reasons why the allegations in Gaudette's proposed First Amended Complaint (ROA.331-348.RE7.) were insufficient to avoid a motion to dismiss on the pleadings:

> "While Gaudette **may have subjectively** felt that resignation was the only viable option, his working conditions **would not compel a reasonable employee to resign**. Accordingly, he has failed to allege a viable constructive discharge claim." **emphasis added.** ROA.265.RE5.

Such a holding is terribly and unreasonably heightened and unfair without any legal reasoning to support it.

First, Gaudette's allegations are to be taken as true. Second, every resignation exercised by an employee fleeing from a hostile work

environment is subjectively viewed as the only viable option. Thirdly, and most onerously, there is no legitimate justification to force such a high standard as requiring a reasonable employee to feel "compelled" to resign instead of simply asking whether a reasonable employee would resign under such circumstances, given the added consequences of being without a paycheck and the added duties of having to mitigate damages or face a future denial of economic damages. Lastly, the District Court's holding does not preclude or mandate that the objective component of the test is not also met by Gaudette's pleading regarding his resignation.

This is especially so in this case given that another employee, not involved in this claim, also resigned his position with fewer but similar reasons to resign as those facing Gaudette, including:

- Concern for a discriminatory environment against gay men within New Century, ROA.336.RE7.,
- Concern for New Century's refusal to take action to stop or address discrimination, ROA.336.RE7.,
- Concern for New Century's readiness to lie to deny and try to coverup discrimination, ROA.337.RE7.
- Concern for New Century's immediate reaction to remove an employee from their job for reporting concern for discriminatory misconduct in the workplace. ROA.337.RE7. and
- So much concern for the above listed components of an abusive work environment that the employee contacted Gaudette, who he barely knew (ROA.341.RE7.) referring in the resignation letter to "a virtual stranger"), to convey what had occurred and that Gaudette "needed to 'watch his back'." ROA.338.RE7.

The District Court did not provide any explanation for how those allegations do not provide the objective component of the pleadings of

45

an abusive work environment sufficient to deny a motion to dismiss a claim for constructive discharge on the pleadings. ROA.395-97.RE4.

The District Court, without explanation or legal reasoning, dismissed Gaudette's allegations regarding how harmful and intolerable the harassment was against Gaudette. Specifically, the District Court did not acknowledge or explain how the litany of harm pled by Gaudette would not "compel a reasonable employee to resign" at least on the pleadings regarding a question of fact, such as this. See above lists of the harassment and harms. *Id.*

It is inappropriate for the District Court to make such conclusory factual determinations when the pleading is so explicit and the question a matter of fact and not law. Gaudette also cited to multiple cases to support the intolerability of New Century's actions against Gaudette.

For example, a supervisor's actions or inactions in the face of discriminatory slurs made in front of a group of employees is certainly a significant factor to be considered in a "totality of circumstances" contributing to a hostile work environment. *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022)

Gaudette having been the target of discriminatory comments and derisive laughter in front of his work team, even while not present, does not lessen the negative impact on the work environment. In *Brumback*, the court found that it did not matter if a [discriminatory] comment was made to individuals other than the plaintiff: "In fact a contrary inference is warranted. This ... bears witness to tolerance by upper management...of such behavior. In addition, the more people before whom [the harasser] demonstrated such conduct without any

46

repercussions, the more reasonable it is that the working environment as a whole ... was abusive." *Brumback v. Callas Contractors*, 913 F. Supp. 929, 939 (D. Md. 1995)

The District Court cited to *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 677 (5th Cir. 2021) for the list of seven factors for the Court to consider in determining whether the plaintiff has plead a constructive discharge. ROA.262.RE5. The list is written disjunctively, but it is not explained further in *Newbury*. However, tracking where that holding came from in *Newbury*, it becomes immediately apparent that that list of seven factors was to be applied disjunctively, singly or in combination, and was not to be considered an exclusive list; just supporting its application in a "totality of the circumstances" and not in a restrictive manner as seemingly suggested by the District Court.[17]

Gaudette asserts that even using the onerous "compelled" language, especially at this pleading stage, that his proposed First Amended Complaint meets that standard. Gaudette even meets that standard when restricted to the "nonexclusive" list of seven factors, read singly or in combination, as it is supposed to be read. Specifically, Gaudette asserts that he has met both factors 6 and 7: (6) badgering, harassment,

---

[17] *Newbury* cites to *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 167 (5th Cir. 2007) as the source and is written disjunctively without explanation. *Lauderdale* cites to *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) as the source and is written disjunctively, but *Brown* explains the list should be considered "**singly or in combination**" without further explanation. *Brown* then cites to *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) as the source, but *Barrow* explains the list should be considered "**singly or in combination**" and also the list is "**not exclusive**." Those two non-restrictive factors were improperly left off subsequent holdings even though these two factors broaden the application of the "totality of the circumstances" standard.

or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Gaudette met these two factors in his proposed First Amended Complaint because he pled that he was harassed and humiliated by being the target of discriminatory denial of his gender, derisive laughter, lied to, not provided with protection from discrimination from management, and lied to on behalf of New Century by his supervisor and co-workers, such that he could no longer trust that he would ever be protected or told the truth about any future harassment or attacks against him and his sexual orientation.

Gaudette also pled that the only other employee that spoke out against the discriminatory comment, derisive laughter, and denial of management enforcement of its policies and lying about the discrimination was pressured to leave and also resigned.

Since this list of seven factors is not exclusive, Gaudette would add another factor to that list, that Gaudette would argue any reasonable person would find intolerable to work under. This additional factor – that is contained in his proposed First Amended Complaint – (8) being forced to work for an employer and alongside employees that would openly lie in denial that the employee was being or had been the target of discriminatory and derisive laughter and ridicule behind your back because of your protected status.

Ultimately, Mr. Gaudette pled sufficient facts to support a plausible constructive discharge claim. The District Court's determination that Mr. Gaudette cannot state a claim as a matter of law for these anti-gay

discriminatory actions and inactions is incorrect and should not be followed.

### B.    The District Court Erred by Not Applying The Reasoning in *Muldrow* to Gaudette's Constructive Discharge Claim.

Gaudette recognizes that a Constructive Discharge claim is different from Disparate Treatment and Hostile Work Environment claims in that Constructive Discharge claims include a resignation and economic damages due to the separation from employment.

Additionally, typically, a plaintiff that makes a constructive discharge claim effectively always makes a hostile work environment claim, as a kind of "lesser-included" claim against the employer with the understanding that the plaintiff must establish that the hostile work environment claim was sufficiently intolerable for a jury to find that the plaintiff was justified in leaving the job rather than remaining in an abusive environment to prevail on the constructive discharge claim.

The current jurisprudence tends to dismiss constructive discharge claims by courts "weighing the evidence" rather than making legal determinations as is the more standard established and legally supported approach in motions to dismiss on the pleadings and summary judgments.

Alternatively, Gaudette respectfully asserts that there is no reason why a disparate treatment claim could result in sufficient denial of an employee's "terms, conditions, and privileges of employment" such that a reasonable employee would feel compelled to resign, instead of

requiring that the claim be one of hostile work environment as a precursor to constructive discharge.

*Muldrow* held that there is no heightened standard contained within Title VII for claims of disparate treatment discrimination. *Muldrow* appropriately did not discuss hostile work environment and constructive discharge claims because those claims were not before the Court in that case.[18]

Both hostile work environment and constructive discharge claims are also different versions of a disparate treatment discrimination claim pursued under Title VII's proscription from disparately denying employees "terms, conditions, and privileges of employment." As argued above in the hostile work environment section, the distinction between that claim and a standard disparate treatment claim is the possibility that the hostile work environment is created and perpetrated by a co-worker or co-workers and outside of the employer's reasonable knowledge rather than by or with the knowledge of the employer. The heightened tests tend to be designed to ensure that the employer is on notice of the harassment and did not act to remediate it prior to the employer being held liable for the existence of the hostile work environment or constructive discharge. See discussion regarding *Meritor*, et al., above.

Gaudette respectfully asserts that there should be no difference with a constructive discharge claim. That is, should an employer be alleged to have been aware of, if not the actual perpetrator of, the

---

[18] And presumably neither party raised those claims like the employer in *Muldrow* had raised the question of retaliation claim standard.

hostility/abusive environment, there should be no difference in the *Muldrow* "some harm" standard applied to disparate treatment, hostile work environment, and constructive discharge claims.

The question of whether the hostility/harassment/abuse was intolerable for a reasonable person in a constructive discharge claim should be a question of fact for a jury to decide and not for a judge to weigh given the absence of any statutory language requiring a significance test to support a claim of discrimination. *Muldrow* 601 U.S. at 350 and 355.

Gaudette would argue that for a constructive discharge claim, like in the test set out in *Saketkoo*, it would be reasonable for the plaintiff to have the same five elements[19] as well as a sixth element: (6) a reasonable employee would have resigned rather than continue working under those circumstances (or some other reasonable language that does not unnecessarily place a statutorily unprescribed heightened burden of harm on the plaintiff).

Again, the sixth element would be a fact question for the jury to decide and that would only result in dismissal of the claim should a plaintiff, as a matter of law, fail to plead that element or otherwise establish that that element was not or could not be met.

Gaudette respectfully asserts that even under the current heightened standard, Gaudette sufficiently pled allegations that

---

[19] (1) he belongs to a protected class; (2) he experienced harassment; (3) the harassment was based on [a protected characteristic]; (4) the harassment affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment and failed to take remedial action. *Saketkoo* 31 F.4th at 1003.

establish an intolerable work environment justifying his constructive discharge from New Century at the time of his resignation such that the dismissal of his constructive discharge claim be reversed and remanded to the District Court to proceed through discovery.

### The District Court Erred in Dismissing Gaudette's Retaliation Claim by Relying Upon Inapplicable Case Law and by Failing to Apply the Factually Based Standard of Determining Whether Gaudette Adequately Pled that New Century's *Quid Pro Quo* Threat Would Have Dissuaded a Reasonable Employee From Engaging in Protected Activity

As argued above, the District Court did not address, respond to, or refute the Objections filed by Gaudette against the Report and Recommendation's failures to justify dismissing Gaudette's retaliation claim. ROA.396.RE4.

Although the District Court accurately cited *Burlington Northern*'s test that the retaliatory action plead "might have dissuaded a reasonable worker from making or supporting [protected activity]," (ROA.265.RE5.) it did not apply that standard and the contextual considerations cautioned by the Supreme Court in that case (as highlighted by Gaudette in his Objections (ROA.367.RE6.) to the facts of this case and did not explain why it did not. The District Court also did not explain why it did not apply this test to Gaudette's proposed First Amended Complaint (ROA.331-348.RE7.). ROA.396.RE4.

The District Court erred by referring to Gaudette's allegations of New Century's threat to report what New Century knew to be a false accusation of a HIPAA violation against Gaudette to the Texas Board of

Nursing as "construing" instead of taking Gaudette's allegations as true. ROA.267.RE5

The District Court also erred by truncating Gaudette's allegations again by leaving off the fact that the threat was a threat to report to the Texas Board of Nursing with a *quid pro quo* offer to "peacefully coexist" following the threat to report Gaudette.

Additionally, Gaudette's proposed First Amended Complaint went into great detail regarding the reason the HIPAA violation allegation made by New Century was knowingly false, that the threat was accompanied by a *quid pro quo* offer to "peacefully coexist," and that the only exchange to which the *quid pro quo* offer could have been referring (and that Gaudette alleged that it was, so that should be the end of the inquiry at this pleading stage) was Gaudette's Title VII complaints against New Century as contained in his resignation letter sent to New Century only two weeks earlier. ROA.343.RE7.

Gaudette specifically plead that New Century's threat held a potential loss of his license, which is a very intimidating action that would dissuade a reasonable employee from continuing to pursue claims of discrimination against their employer.

Lastly, the District Court relied upon several out of date and factually distinguishable cases from Gaudette's claims to justify its finding that Gaudette did not plead a viable retaliation claim. Gaudette distinguished those as factually or legally inapplicable in his Objections (ROA.367-368.RE6.)

As such, Gaudette respectfully asserts that the District Court dismissed his retaliation claim in error and respectfully requests that

this Court reverse this dismissal and remand it to the District Court to proceed through discovery.

## CONCLUSION

For these reasons, Gaudette respectfully requests that this Court reverse the order of the District Court dismissing all four of his claims and remand all four claims in this case to proceed through discovery and the normal litigation process by finding on *de novo* review that Gaudette's four claims are adequately pled in Gaudette's First Amended Complaint. ROA.331-348.RE7. Gaudette also respectfully requests that this Court apply or reconcile the holdings in *Muldrow* and *Hamilton* to Gaudette's disparate treatment, hostile work environment, and constructive discharge claims, and such other and further relief that this Court determines justice and equity so require.

Respectfully submitted,

s/ *Robert Stephen Notzon*

Robert Stephen Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
Robert@NotzonLaw.com
(512)-474-7563
COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE

I certify the service of this document by ECF on October 23, 2024, upon:

Sara E. Janes
sjanes@wshllp.com
Kevin Mullen
kevin@themullenfirm.com

         *s/ Robert Stephen Notzon*
         Robert Stephen Notzon

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; and (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1.

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because Microsoft Word reports that it contains 12,919 words, excluding the material not counted under the rule, and complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it was prepared in Microsoft Word using a Century Schoolbook proportionally spaced typeface (14-point in the brief and 12-point in the footnotes).

         *s/ Robert Stephen Notzon*
         Robert Stephen Notzon