No. 24-50523

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**David Edward Gaudette,**
*Plaintiff-Appellant,*

**v.**

**Angel Heart Hospice, LLC, dba**
**New Century Hospice, Inc.**
*Defendant-Appellee.*

Appeal from the United States District Court for the
Western District of Texas, Austin Division,
Case No. 1:23-CV-00769-RP
Honorable Robert Pitman, United States District Judge

## BRIEF OF APPELLEE

Sara E. Janes
State Bar No. 24056551
WEISBART SPRINGER HAYES LLP
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax
sjanes@wshllp.com

Kevin S. Mullen
State Bar No. 24032892
THE MULLEN FIRM PLLC
500 N. Capital of Texas Highway
Building 2
Austin, Texas  78746
512.537.7959
kevin@themullenfirm.com

ATTORNEYS FOR APPELLEE

ORAL ARGUMENT NOT REQUESTED

# CERTIFICATE OF INTERESTED PERSONS

## No. 23-50646

### *David Edward Gaudette v. Angel Heart Hospice, LLC dba New Century Hospice, Inc.*

Pursuant to Fifth Circuit Rule of Appellate Procedure 26.1 and Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| Interested Parties | Description of Interest |
|---|---|
| David Edward Gaudette | Plaintiff-Appellant |
| Robert Notzon<br>THE LAW OFFICE OF ROBERT NOTZON | Counsel for Plaintiff-Appellant |
| Angel Heart Hospice, LLC dba New Century Hospice of Austin, Inc. | Defendant-Appellee |
| Sara E. Janes<br>WEISBART SPRINGER HAYES LLP | Counsel for Defendant-Appellee |
| Kevin S. Mullen<br>THE MULLEN FIRM PLLC | Counsel for Defendant-Appellee |
| The parent of Angel Heart Hospice, LLC d/b/a New Century Hospice of Austin is New Century Hospice, Inc. Although there is no publicly-held corporation that owns 10% or more of Angel Heart Hospice, LLC's stock, that entity is part of a larger enterprise that is partially owned by Humana, Inc. | |

Dated: November 22, 2024

/s/ *Sara E. Janes*

Sara E. Janes
State Bar No. 24056551
sjanes@wshllp.com
**Weisbart Springer Hayes llp**
212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

Kevin S. Mullen
State Bar No. 24032892
**The Mullen Firm pllc**
500 N. Capital of Texas Highway
Building 2
Austin, Texas  78746
512.537.7959
kevin@themullenfirm.com

**Attorneys for Appellee
Angel Heart Hospice, L.L.C.
dba New Century Hospice, Inc.**

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will not help the Court decide the straightforward issues presented by this employment case. Gaudette's claims were decided on a Rule 12(c) motion for judgment on the pleadings, so the record is small. Gaudette acknowledges that oral argument would not be helpful for this issue. And Gaudette has forfeited most, if not all, of the issues presented to this Court. If the Court reaches them, the merits are straightforward, too. While *Muldrow*[1] and *Hamilton*[2] are significant cases, *see* GBr.iii, they have no application to *this* case. Moreover, Gaudette cited them below only in regard to a disparate treatment claim he identified too late in the process—and that was not adequately pled, even under *Muldrow* and *Hamilton*'s new lower standard. Gaudette did not argue below that *Muldrow* and *Hamilton* had any bearing on his hostile-work-environment, constructive-discharge, or retaliation claims—they do not—and he cannot do so on appeal. The Court should decline Gaudette's request for oral argument.

---

[1] *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

[2] *Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc). Gaudette also mentions a third case, *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020), but he does not address the case anywhere in his briefing.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................. i

Statement Regarding Oral Argument ...................................... iii

Table of Contents ..................................................................... iv

Table of Authorities ................................................................ vii

Statement of the Issues ............................................................ xii

Record References .................................................................. xiv

    I.      Summary of Argument ............................................... 1

    II.    Statement of the Case ............................................... 4

        A.    Allegations in Gaudette's Original Complaint. ..................... 4

        B.    Procedural background. ....................................... 10

            1.    New Century moves for judgment on the pleadings on Gaudette's Original Complaint. ....................................... 10

            2.    Gaudette attempts to amend his complaint for the first time. ....................................... 10

            3.    The magistrate judge recommends ruling against Gaudette. ....................................... 11

            4.    Gaudette files objections and seeks leave to file a different amended complaint. ....................................... 11

            5.    Judge Pitman enters a final judgment against Gaudette. ....................................... 12

    III.   Standards of Review ....................................... 13

        A.    Judgment on the pleadings under Rule 12(c) ..................... 13

        B.    Denial of leave to amend ....................................... 15

    IV.    Argument ....................................... 15

        A.    Gaudette has forfeited all issues on appeal ..................... 15

            1.    Gaudette failed to attack what the report and recommendation *actually* did. ....................................... 16

            2.    The Court should decline to consider any argument regarding dismissal on the pleadings. ....................................... 17

3. The Court should reject any argument based on the Second Proposed Amendment. ........................................ 19

    a. Gaudette has not adequately briefed error in the denial of leave to amend. ....................................... 21

    b. Alternatively, Gaudette has not shown he meets the requirements for obtaining leave to amend. ..................................................................... 22

B. Gaudette's appeal fails on the merits, too. ........................... 26

1. Gaudette did not plausibly allege disparate treatment. ......................................................................... 26

    a. Gaudette's Original Pleading did not allege disparate treatment. ..................................................... 26

    b. The Second Proposed Amendment, even assuming it were proper, did not plausibly allege disparate treatment. .......................................... 27

2. Gaudette did not plausibly allege a hostile work environment. .................................................................... 30

    a. *Muldrow* and *Hamilton* have no bearing on Gaudette's hostile-work-environment and constructive-discharge claims. ..................................... 30

    b. Gaudette's brief fails to engage with the actual law governing hostile-work-environment claims. ..................................................................... 36

    c. Alternatively, Gaudette's pleadings did not plausibly allege a hostile-work-environment claim under the relevant test. ..................................... 38

    d. A brief period of management inaction, which is all Gaudette has pled, does not create a hostile work environment. .............................. 42

3. Gaudette's pleadings did not plausibly allege constructive discharge. ..................................................... 44

4. Gaudette did not plausibly allege—or sufficiently brief—retaliation. ........................................................... 47

V.    Conclusion and Prayer .............................................................51

Certificate of Service ................................................................54

Certificate of Compliance .........................................................55

# TABLE OF AUTHORITIES

## Cases

*Aryain v. Wal-Mart Stores Tex. LP,*
    534 F.3d 473 (5th Cir. 2008) ........................................................ 46

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................... 14

*Bean Dredging LLC,*
    589 F.3d 196 (5th Cir. 2009) .......................................................... 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................. 14, 51

*Bostock v. Clayton Cnty.,*
    590 U.S. 644 (2020) ............................................................. iii, 32

*Brown v. Kinney Shoe Corp.,*
    237 F.3d 556 (5th Cir. 2001) .................................................... 35, 45

*Burlington Indus. v. Ellerth,*
    524 U.S. 742 (1998) ................................................................... 34

*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006) ............................................................. 47, 50

*Butler v. Ysleta Indep. Sch. Dist.,*
    161 F.3d 263 (5th Cir. 1998) ......................................................... 39

*Bye v. MGM Resorts Int'l, Inc.,*
    49 F.4th 918 (5th Cir. 2022) ........................................................ 45

*Cicalese v. Univ. of Tex. Med. Branch,*
    924 F.3d 762 (5th Cir. 2019) ........................................................ 28

*Clark v. City of Alexandria,*
    116 F.4th 472 (5th Cir. 2024)........................................................ 34

*Cooper v. Fed. Rsrv. Bank of Richmond,*
    467 U.S. 867 (1984) ................................................................... 28

*Davis v. Dallas Area Rapid Transit,*
    383 F.3d 309 (5th Cir. 2004) ........................................................ 48

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ....................................................... 14

*Dornhecker v. Malibu Grand Prix Corp.*,
    828 F.2d 307 (5th Cir. 1987) ....................................................... 46

*E.E.O.C. v. Rite Way Serv., Inc.*,
    819 F.3d 235 (5th Cir. 2016) ....................................................... 49

*E.E.O.C. v. Serv. Temps Inc.*,
    679 F.3d 323 (5th Cir. 2012) ....................................................... 22

*Ellis v. Compass Grp. USA, Inc.*,
    426 F. App'x 292 (5th Cir. 2011) ................................................ 48

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ............................................................. 33, 39

*Gentilello v. Rege*,
    627 F.3d 540 (5th Cir. 2010) ....................................................... 13

*Hamilton v. Dallas Cnty.*,
    79 F.4th 494 (5th Cir. 2023)................................................... passim

*Harris v. Forklift Sys.*,
    510 U.S. at 21–22 (1993) ...................................................... passim

*Higgins v. Lufkin Indus.*,
    633 F. App'x 229 (5th Cir. 2015) ................................................ 47

*Johnson v. Miller*,
    98 F.4th 580 (5th Cir. 2024).......................................................... 13

*Kelley v. Alpine Site Servs., Inc.*,
    110 F.4th 812 (5th Cir. 2024)................................................. 19, 22

*Longmire v. Guste*,
    921 F.2d 620 (5th Cir. 1991) ....................................................... 13

*Martinez v. Nueces Cnty.*,
    71 F.4th 385 (5th Cir. 2023).......................................................... 15

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ............................................................... 32, 33

*Muldrow v. City of St. Louis*,
    601 U.S. 346 (2024) ........................................................... passim

*Nat'l Rr. Passenger Corp. v. Morgan,*
536 U.S. 101 (2002) ........................................................................ 34

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75,80 (1998) ........................................................ 33, 38, 43

*Pa. State Police v. Suders,*
542 U.S. 129 (2004) ........................................................................ 34

*Peel & Co. v. Rug Mkt.,*
238 F.3d 391 (5th Cir. 2001) ...................................................... 36, 47

*Porretto v. City of Galveston Park Bd. of Trs.,*
113 F.4th 469 (5th Cir. 2024) ........................................................ 15

*Powers v. Northside Indep. Sch. Dist.,*
951 F.3d 298 (5th Cir. 2020) .......................................................... 13

*Preciado v. Recon Sec. Corp.,*
No. EP-23-CV-00052-RFC,
2024 U.S. Dist. LEXIS 129443 (W.D. Tex. July 23, 2024) ............ 35

*Rogers* v. *E.E.O.C.,*
454 F.2d 234 (5th Cir. 1971),
cert. denied, 406 U.S. 957 (1972) .................................................. 33

*Rollins v. Home Depot USA, Inc.,*
8 F.4th 393 (5th Cir. 2021) ................................................ 19, 22, 32

*Sacks v. Tex. S. Univ.,*
83 F.4th 340 (5th Cir. 2023) .......................................................... 13

*Saketkoo v. Adm'rs of Tulane Educ. Fund,*
31 F.4th 990 (5th Cir. 2022) ...................................... 37, 38, 39, 41

*Scanlan v. Tex. A&M Univ.,*
343 F.3d 533 (5th Cir. 2003) ............................................................ 5

*Septimus v. Univ. of Hous.,*
399 F.3d 601 (5th Cir. 2005) .......................................................... 43

*Shaw v. Restoration Hardware, Inc.,*
93 F.4th 284 (5th Cir. 2024) .............................................. 15, 24, 25

*Spann v. FedEx Freight, Inc.,*
No. 3:23-CV-399-TSL-RPM,
2024 U.S. Dist. LEXIS 113983 (S.D. Miss. June 17, 2024) ........... 29

*Stewart v. Miss. Transp. Comm'n*,
    586 F.3d 321 (5th Cir. 2009) ........................................................ 39

*Taliaferro v. Lone Star Implementation & Elec. Corp.*,
    693 F. App'x 307 (5th Cir. 2017) ................................................. 49

*Thomas v. JBS Green Bay, Inc.*,
    No. 24-1404, 2024 U.S. App. LEXIS 28449 (7th Cir. Nov. 8,
    2024) ............................................................................................... 29

*Turner v. Baylor Richardson Med. Ctr.*,
    476 F.3d 337 (5th Cir. 2007) ........................................................ 39

*United States ex rel. Adrian v. Regents of Univ. of Cal.*,
    363 F.3d 398 (5th Cir. 2004) ........................................................ 25

*Williams v. Memphis Light, Gas & Water*,
    No. 23-5616, 2024 U.S. App. LEXIS 17623 (6th Cir. July 16,
    2024) ............................................................................................... 35

*Woods v. Cantrell*,
    29 F.4th 284 (5th Cir. 2022) ........................................................ 44

*Zuniga v. City of Dallas Tex.*,
    No. 3:23-CV-2308-D, 2024 U.S. Dist. LEXIS 94199
    (N.D. Tex. May 28, 2024) ............................................................. 35

## Statutes

28 U.S.C. § 636 ................................................................... passim

42 U.S.C. § 1320 ......................................................................... 8

42 U.S.C. § 2000e-2 .................................................................. 32

42 U.S.C. § 2000e-3 .................................................................. 48

## Rules

FED. R. APP. P. 28 ..................................................................... 19

FED. R. CIV. P. 12 ................................................................. 5, 14

FED. R. CIV. P. 16 .............................................................. 22, 23

x

# STATEMENT OF THE ISSUES

A.    In this case, New Century moved for 12(c) judgment on the pleadings based on Gaudette's Original Complaint. Gaudette responded in opposition and also asked for leave to file a proposed amendment. The magistrate judge issued a report and recommended granting the 12(c) motion and denying leave to amend. Gaudette then sought leave to file a *second* proposed amendment and filed objections devoted exclusively to arguing that the newly proposed amendment was sufficient—even though that proposed amendment was never before the magistrate judge. In the order challenged on appeal, the district court adopted the report and recommendation and denied leave to file the second proposed amendment. Gaudette's brief fails to: (1) meaningfully complain about the report and recommendation's analysis, (2) challenge the dismissal of his Original Complaint, and (3) challenge the denial of leave to amend or show that the second proposed amendment was proper. *Has Gaudette forfeited all the issues in this appeal?* (Part IV.A; issue not addressed by Gaudette)

B.    *If* the Court reaches the merits of the allegations in Gaudette's second proposed amendment, *has Gaudette failed to state a claim for—and in some cases brief—*

    1. *Disparate treatment* (Part IV.B.1; Gaudette's issue 1)

    2. *Hostile work environment* (Part IV.B.2; Gaudette's issue 2)

    3. *Constructive discharge* (Part IV.B.3; Gaudette's issue 3)

    4. *Retaliation* (Part IV.B.4; Gaudette's issue 4)*?*

C.    Gaudette's brief focuses largely on whether the district court erred by not applying the new standard for disparate treatment claims,

announced in the recent *Muldrow* and *Hamilton* opinions, to his hostile-work-environment and constructive-discharge claims. But he did not make these complaints below. Moreover, Gaudette has no legal support for his argument that *Muldrow* and *Hamilton* have any bearing on hostile-work-environment and constructive-discharge claims. *Has Gaudette forfeited this issue, too, and, if not, has he failed to show that* Muldrow *and* Hamilton *apply to these claims?* (Part IV.B.2.a.; Gaudette's issues 2 and 3).

# RECORD REFERENCES

References to the record on appeal are to ROA.[page]. References to portions of the record that are included in Gaudette's record excerpts are to ROA.[page].GRE.Tab[number]. References to portions of the record that are included in New Century's record excerpts are to ROA.[page].NCRE.Tab[number]. References to Gaudette's brief are to GBr.[page], using the pagination at the bottom of the page.

## I.  Summary of Argument

Plaintiff-Appellant David Gaudette is a former employee of Defendant-Appellee New Century Hospice, Inc. He worked for New Century for four years in what he describes as a "positive," "professional," and "respectful" employment relationship. According to Gaudette, "all that changed" based on a single, isolated incident: In a meeting that Gaudette did not attend, one of his coworkers made an offensive joke about Gaudette's feminine mannerisms, several of his other coworkers laughed, and New Century management failed to take action during the meeting and for a few days afterward. Gaudette resigned "in protest" five days later—without ever speaking to New Century's management or human resources. After his resignation, New Century sent Gaudette a letter reminding him of his serious obligations under HIPAA, which Gaudette viewed as a retaliatory act. Although he has attempted to expand his pleadings on more than one occasion, this simple nucleus of facts has not changed. *If* this Court chooses to reach the merits, it should affirm the decision of the district court that these facts—no matter how sensationally Gaudette characterizes them—do not state a claim.

Given the way this case has unfolded, however, the Court need not—and should not—reach the merits, as Gaudette has forfeited issues at every turn. Around two years after the alleged incident, Gaudette filed suit under Title VII, asserting claims for hostile work environment, constructive discharge, and retaliation. The complaint also mentions "disparate treatment" once, although without any elaboration as to what is meant by the term. When New Century filed a 12(c) motion for judgment on the pleadings, Gaudette opposed the motion and alternatively sought leave to file a contemporaneously submitted amended complaint. After considering both Gaudette's original complaint and the proposed amendment, the magistrate judge recommended granting New Century's 12(c) motion and denying leave to amend.

Gaudette "objected" to the report and recommendation, but not really. Rather than complain that the magistrate judge had incorrectly analyzed his original complaint and proposed amendment, he argued that a *second* proposed amendment—one he filed *after* the deadline to amend the pleadings and *after* the magistrate judge issued the report and recommendation—stated viable claims. In other words, his "objections"

did not join issue with the decision the court had actually made. The district court, after conducting a de novo review, overruled the objections, adopted the report and recommendation as its own order, and granted judgment on the pleadings. The district court also denied the motion for leave to file the second proposed amendment, concluding that it "once again" failed to state a plausible claim for relief under Title VII.

On appeal, Gaudette has done the same thing he did below. Without even trying to explain why it was appropriate for him to file a second proposed amendment, he acts as though the district court granted judgment on something other than the live pleading. He goes so far as to ask this Court to consider the second proposed amendment as his live pleading for purposes of its analysis. But the second proposed amendment was only that—an untimely proposal—and Gaudette cannot ask this Court to review a decision the district court did not make. Gaudette does *not* challenge the two rulings the district court actually made, and he has therefore forfeited this entire appeal.

Finally, in an attempt to hook this Court on an interesting legal issue, Gaudette tries to capitalize on two recent, significant decisions, arguing that *Muldrow v. City of St. Louis* and *Hamilton v. County of*

*Dallas* apply to hostile-work-environment and constructive-discharge claims as well as to disparate-treatment claims. Gaudette did not make this argument below. But even if he had, he would be mistaken. On their face, and on further analysis, *Muldrow* and *Hamilton* do not change the long-recognized standards for claims of hostile work environment and constructive discharge.

This Court should not condone Gaudette's behavior. It should not encourage employees, particularly those who admit they had a good relationship with their employers, to quit within days of a single, isolated incident without once talking to management or human resources. And it should not encourage parties to treat pleadings and legal issues as continually moving targets. The district court's order should be affirmed in all respects.

## II.    Statement of the Case

### A.    Allegations in Gaudette's Original Complaint.[3]

Gaudette, who is gay, worked as a Registered Nurse for Angel Heart Hospice, LLC d/b/a New Century Hospice of Austin, Inc., a hospice

---

[3] This section is based on the allegations in Gaudette's Original Complaint, the live pleading at the time of the report and recommendation and final order. *See* ROA.7–

care provider. ROA.8.NCRE.Tab1, ¶¶6–7.NCRE.Tab1. He alleges that he "had worked with the understanding that he was part of a mutually respectful and professional relationship with his patients, co-workers, management, and administration." *Id.*, ¶9.

Gaudette alleges that "all that changed" when he "learned" from another employee (a "virtual stranger") that he was the "subject of ridicule and derisive comments and laughter during a staff meeting on [Wednesday] September 15, 2021 regarding being negatively and disrespectfully perceived as outside the norm of expectation for heterosexual males." ROA.8–9.NCRE.Tab1, ¶10; ROA.65.NCRE.Tab2.[4] He alleges that, in that meeting, two of his coworkers made "disrespectful

---

14.NCRE.Tab1 (filed in July 2023). The Original Complaint is the only complaint that was ever operative. *See infra* Part IV.A.2.

Although well-pleaded factual allegations must be taken as true for purposes of 12(c) motions, New Century notes that it vigorously disagrees with the "facts" as set forth in Gaudette's pleadings.

[4] Under Rules 12(b)(6) and 12(c) and, a court's inquiry is limited solely to the allegations on the face of the pleadings, not outside evidence. FED. R. CIV. P. 12(b)(6), 12(c); *Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). There is one exception to the rule that a court's inquiry is limited to the face of the complaint: a court may also consider documents attached to the motion to dismiss if such "are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan*, 343 F.3d at 536. Thus, some of the record cites in this section are to Gaudette's resignation email, which he referred to in his complaint and is central to his hostile-work-environment and constructive-discharge claims. ROA.8–11.NCRE.Tab1, ¶¶10–18, 20; ROA.65.NCRE.Tab2.

comments" about him that "essentially stripped Gaudette of his gender by suggesting in overly affected tones that Gaudette would not be mistaken for a male Hospice RN." ROA.9.NCRE.Tab1, ¶11. Several other coworkers at the meeting "engaged in derisive and disrespectful enjoyment and laughter" in response to the coworkers' comments, Gaudette alleges. ROA.9.NCRE.Tab1, ¶13. (Gaudette's Original Complaint refers repeatedly to "comments," but the proposed amendment Gaudette asks this Court to consider instead, along with Gaudette's briefing regarding that proposed amendment, make clear it was a single statement. ROA.335.GRE.Tab7, ¶24–25.)

Gaudette alleges that his supervisor, Jon Godby, was present at the meeting but "took no action to protect Gaudette from the unwarranted and illegal ridicule or even, at a minimum, communicate that such disrespectful and discriminatory comments and conduct are unacceptable and would not be tolerated in [New Century]'s workplace." ROA.9.NCRE.Tab1, ¶14. Gaudette contends that New Century later chose to deny that the discriminatory comments and laughter had occurred." ROA.10.NCRE.Tab1, ¶17. He further contends that New Century "force[d] sensitivity training on the employees." ROA.10–

11.NCRE.Tab1, ¶18. According to Gaudette, New Century "failed or refused" to: "acknowledge" or "apologize for" the gender-based transgressions, "express" that it "had to correct the existing environment that would allow such transgressions to occur," and "communicate a present and continued commitment to maintain a protected and mutually respectful workplace for all of its employees." ROA.11.NCRE.Tab1, ¶19. But Gaudette does not allege that he complained to anyone in New Century's management or human resources.

Gaudette quit shortly before 8:30 a.m. on Monday, September 20, 2021, five days after the meeting in which the comments were allegedly made. ROA.10.NCRE.Tab1, ¶18; ROA.65.NCRE.Tab2. His resignation email read:

> I have been bullied and made fun of because of my mannerisms and the way that I sound since childhood. I am now 44 years old and had to hear from a virtual stranger that my coworkers, people who I considered to be personal friends, openly mock and laugh at me for those very same things when I am not around. I'll never know who laughed and who didn't and therefore will never be able to look at any of you in the same way. Please do not call me to say "I didn't laugh", or "I didn't mean it that way", or most offensive "I was laughing at HER, not YOU". My heart is broken and I am deeply

saddened. My resignation is effective immediately. Don't worry, I did not badmouth our company to anyone over the weekend. That's just not who I am.

ROA.65.NCRE.Tab2.

After Gaudette told New Century he was "quitting his position in protest," New Century learned that Gaudette may have violated the HIPAA[5] rights of one of its patients. ROA.11.NCRE.Tab1, ¶20; ROA.67.NCRE.Tab3.[6] In response, New Century sent Gaudette a letter that stated:

Dear Mr. Gaudette,

This letter is being sent to you on behalf of Gentiva Health Services, Inc. and its affiliates, including your former employer New Century Hospice (collectively, "New Century"). We understand that you are no longer employed by New Century effective September 20, 2021. On September 24, 2021, you reached out to a facility director to discuss x-ray results for one of New Century's patients. **We believe that this may be a HIPAA breach and that conversations regarding the care and treatment of New Century's patients must stop immediately.**

As a Registered Nurse regulated by the State of Texas, you should be well-aware that HIPAA requires you to maintain

---

[5] The Health Insurance Portability and Accountability Act of 1996 protects the privacy of patient information, among other things. *See* 42 U.S.C. §§ 1320d *et seq.*

[6] This letter was referred to in Gaudette's Original Complaint and is central to his retaliation claim. ROA.11.NCRE.Tab1, ¶20; ROA.67.NCRE.Tab3; *see also supra* n.4.

the absolute secrecy of patient information, including medical treatment. You must understand that, as a former employee of New Century, even following your separation, you also owe New Century a continuing legal duty to maintain the confidentiality of its patient information, including medical and treatment information regarding its patients and their care providers that you obtained while employed by New Century.

HIPAA protects the confidentiality of healthcare information. HIPAA creates and protects individual privacy rights for protected health information and governs the use and disclosure of that information. The penalties for HIPAA infractions can be severe. We are happy to peacefully coexist, but we cannot and will not tolerate HIPAA violations. Please abide by your obligations to ensure that additional actions do not become necessary.

ROA.67.NCRE.Tab3. Gaudette characterizes this letter as a "threat" of "the potential loss of his nursing license" for a HIPAA violation New Century "knew was pretextual," "as a means of dissuading Gaudette from continuing to pursue" his discrimination claims. ROA.11.NCRE.Tab1, ¶20.

Gaudette claims that the disrespectful comments, his co-workers' laughter, and his supervisor's failure to speak out "established a discriminatorily hostile work environment." ROA.10.NCRE.Tab1, ¶16. He claims that his quitting "in protest" was "constructive discharge."

ROA.10–11.NCRE.Tab1, ¶¶18, 20. Finally, he claims that the HIPAA letter sent after his resignation was a "retaliatory action." ROA.11.NCRE.Tab1, ¶21.

## B.    Procedural background.

### 1.    New Century moves for judgment on the pleadings on Gaudette's Original Complaint.

In February 2024, New Century moved for judgment on the pleadings pursuant to Rule 12(c). ROA.50–67. New Century sought dismissal of "all Gaudette's claims": hostile work environment, constructive discharge, and retaliation. ROA.50, 54, 57, 59, 62.

### 2.    Gaudette attempts to amend his complaint for the first time.

Gaudette responded by attempting to defend the sufficiency of his Original Complaint, ROA.180–82. Like New Century, he described his claims as "gender-based discriminatory hostile work environment," "constructive discharge," and "retaliation." ROA.179. Gaudette's response requested, in the alternative, that he be given leave to amend, and he attached a proposed First Amended Complaint (the First Proposed Amendment). ROA.189, 191–209.

### 3. The magistrate judge recommends ruling against Gaudette.

In her report and recommendation, United States Magistrate Judge Susan Hightower determined that Gaudette had not alleged a plausible claim under Title VII, and she recommended that the district court grant New Century's 12(c) motion. She also recommended that Gaudette's "request for leave to amend be denied as futile." ROA.268.GRE.Tab.5. The report and recommendation contained this clear and required warning:

> A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ROA.270.GRE.Tab5 (citing 28 U.S.C. § 636(b)(1) and other authorities).

### 4. Gaudette files objections and seeks leave to file a different amended complaint.

Gaudette filed objections to the report and recommendations. ROA.350–70.GRE.Tab6. He alleged error in the dismissal of his Original Complaint in a single sentence and did not mention the denial of leave to

file his First Proposed Amendment. *Id.*; ROA.351.GRE.Tab6. Instead, Gaudette sought leave to file a brand-new amended complaint (the Second Proposed Amendment). ROA.326–47.GRE.Tab7. By this point, it was six months after the pleading deadline. ROA.36; ROA.327.GRE.Tab7. Gaudette's objections were based entirely on—and cited exclusively to—the allegations in his Second Proposed Amendment. ROA.351–56.GRE.Tab6.[7]

### 5.    Judge Pitman enters a final judgment against Gaudette.

United States District Court Judge Robert Pitman reviewed the report and recommendation de novo, overruled Gaudette's objections, and adopted the report and recommendation as the district court's own order. ROA.395. He concluded that the Second Proposed Amendment did not cure Gaudette's "pleading deficiencies and *once again* fail[ed] to state a plausible claim for relief under Title VII." ROA.396.GRE.Tab4 (emphasis added). And, generously considering Gaudette's new disparate-treatment claim, Judge Pitman found that any such claim, if

---

[7] Gaudette initially filed his Second Proposed Amendment as an exhibit to his objections, seeking leave to file in a footnote. ROA.278. The district court struck Gaudette's objections and exhibit but gave Gaudette an opportunity to refile. ROA.325. Gaudette's objections continued to cite only to the Second Proposed Amendment. ROA.352.GRE.Tab6 n.2.

pled, was "deficient" for the same reasons Gaudette's other claims were "lacking." ROA.397.GRE.Tab4 n.1. He entered a final judgment that same day.

Gaudette timely appealed "from the grant of judgment on the pleadings." ROA.399.GRE.399.

## III.    Standards of Review

### A.    Judgment on the pleadings under Rule 12(c)

This Court reviews a district court's ruling on a 12(c) motion for judgment on the pleadings de novo, applying the same standard as the district court. *Johnson v. Miller*, 98 F.4th 580, 583 (5th Cir. 2024) (citing *Gentilello v. Rege*, 627 F.3d 540, 543 (5th Cir. 2010)); *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020).[8] The Court "may affirm dismissal on any ground that the record supports." *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 344 (5th Cir. 2023).

---

[8] Gaudette faults the district court with not providing "additional reasoning" beyond that contained in the report and recommendation. GBr.27–28, 42–43, 52. Without authority, he asserts this omission constitutes an "absence of evidence" of a de novo review by the district court. But this accusation gets the inquiry backwards. This Court "assume[s] that the district court did its statutorily commanded duty in the absence of evidence to the contrary." *Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991). District courts are not required to provide reasons beyond those contained in a magistrate judge's report. *See id.* The fact that the district court relied on the report and recommendation is not "indicative" of error in its analysis or review.

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed." FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Rule 12(b)(6) provides for dismissal when the plaintiff "fail[s] to state a claim upon which relief can be granted."

To survive a motion to dismiss (or a motion for judgment on the pleadings), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).[9] "[F]acial plausibility" means "factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Plaintiffs must allege actual facts that "nudge[] their claims

---

[9] The complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Consequently, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," and the complaint should be dismissed. *Id.*

## B. Denial of leave to amend

Denials of leave to amend are generally reviewed for abuse of discretion. *Martinez v. Nueces Cnty.*, 71 F.4th 385, 391 (5th Cir. 2023). When a denial is based "solely" on futility, a de novo standard applies, and the Court's "analysis mimics that of a motion to dismiss." *Id.*; *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 491 n.9 (5th Cir. 2024). But if the dismissal is not based solely on futility, but also based on, for example, an untimely pleading or repeated failure to correct a pleading's deficiencies, the standard of review is still abuse of discretion. *Poretto*, 113 F.4th at 491 n.9; *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 288 (5th Cir. 2024).

## IV. Argument

## A. Gaudette has forfeited all issues on appeal.

The district court's order—which adopted the magistrate judge's report and recommendation—did two things. First, it granted New

Century's motion for judgment on the pleadings and dismissed Gaudette's claims. ROA.395–97.GRE.Tab4. Second, it denied Gaudette's motion for leave to file his Second Proposed Amendment. *Id.* Gaudette has not adequately briefed either ruling. Nor has he attacked any portion of the report and recommendation. Thus, the Court can summarily dismiss Gaudette's arguments on appeal and affirm the district court's order.

### 1. Gaudette failed to attack what the report and recommendation *actually* did.

Below, Gaudette's objections to the report and recommendation failed to address the magistrate judge's rulings that were premised on the live complaint and then-pending First Proposed Amendment, instead arguing that his new, post-recommendation *Second* Proposed Amendment adequately pled his claims. ROA.350–71.GRE.Tab6 (not once citing the Original Complaint or First Proposed Amendment). In doing so, Gaudette essentially conceded that he was not objecting to any "portion[] of the [Magistrate Judge's] report or specified proposed… recommendation[]," 28 U.S.C. § 636(b), but rather objecting to how Gaudette *thinks* the magistrate judge *might* have ruled *if,* instead of filing the First Proposed Amendment in response to New Century's

motion, he had instead filed the Second Proposed Amendment upon which his objections exclusively relied. Gaudette, in effect, petitioned the district court for an advisory opinion on *what might have been,* not a determination of the magistrate judge's real-life recommendations. Because Gaudette failed to object to the report and recommendation, he is barred from seeking appellate review except for plain error—a standard he does not address in his brief. 28 U.S.C. § 636(b)(1) (barring party from obtaining any review by appellate court, except for plain error, for issues not objected to in magistrate's report).

### 2.    The Court should decline to consider any argument regarding dismissal on the pleadings.

When New Century moved for judgment on the pleadings based on the Original Complaint, Gaudette responded by defending the three claims set forth in that pleading and, in the alternative, seeking leave to file his First Proposed Amendment. ROA.179, 189. Aside from the fact that Gaudette did not seek leave to amend—and did not explain why such leave was justified—the process up to this point was orderly.

After full briefing from both parties, the magistrate judge issued a report recommending that the district court (i) grant judgment on the Original Complaint and (ii) deny leave to file the First Proposed

Amendment. ROA.267–69.GRE.Tab5. And that is when Gaudette turned the process upside down. He filed objections to the report and recommendation, but, incredibly, *did not object to either of the magistrate's actual rulings. See* ROA.351.GRE. Tab6 (asserting in a single sentence, without citation or elaboration, that the Original Complaint set forth sufficient facts and not mentioning denial of leave to file First Proposed Amendment). Instead, he sought leave to file another amendment, the Second Proposed Amendment.

On appeal, Gaudette persists in his "moving target" strategy. He continues to ignore the district court's dismissal of his claims as set forth in his Original Complaint. He devotes a single sentence, unaccompanied by explanation, analysis, or record cites, to the Original Complaint, asserting simply that it "sufficiently pled" his claims. GBr.11. But the rest of his brief, including the prayer, focuses exclusively on the Second Proposed Amendment. *See infra* Part IV.A.3. Remarkably, Gaudette requests that the Court treat the Second Proposed Amendment as the "current live pleading." GBr.43. But Gaudette's request aside, the only pleading that was ever live—and thus that could have been the basis for a dismissal order—was his Original Complaint. ROA.1–6.GRE.Tab1.

In failing to address the district court's actual dismissal ruling, Gaudette has forfeited that issue. *See* FED. R. APP. P. 28(a)(8); *Kelley v. Alpine Site Servs., Inc.*, 110 F.4th 812, 817 (5th Cir. 2024) (declining to consider issue when appellant failed to "provide meaningful analys[i]s" or "present more than conclusory allusions as to their arguments"); *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) (holding that a party "forfeits an argument by failing to raise it in the first instance in the district court … or by failing to adequately brief the argument on appeal"); *see also* 28 U.S.C. § 636(b)(1) (barring party from obtaining any review by appellate court, except for plain error, for any issues not objected to in report and recommendation). The district court's order granting judgment on the pleadings can be readily affirmed.

### 3. The Court should reject any argument based on the Second Proposed Amendment.

Instead of asserting error in the magistrate judge's actual recommendations, Gaudette sought leave to file a *Second* Proposed Amendment. ROA.326–28, 351–56.GRE.Tab6. In Gaudette's objections to the report and recommendation, all his citations were to the Second Proposed Amendment, and all his arguments were based on that

proposed amendment as well. *Id.* at 351, 350–70 & n.2[10] In this appeal, likewise, all Gaudette's citations and arguments rest on the Second Proposed Amendment. GBr.2–6, 11–12 & n.4. As Gaudette admits, this was a brand-new proposed amendment that was not before Judge Hightower when she made her recommendation. GBr.23.

Gaudette asks the Court to "consider his second proposed First Amended Complaint (ROA.331-348.GRE.Tab7.) as the pleading upon which this Court conducts its *de novo* review of the issues in this appeal." GBr.11–12. But before the Court could conduct any de novo review of the Second Proposed Amendment, it would have to determine that Gaudette adequately briefed the denial of leave to amend on appeal. It would also have to determine that it was proper for Gaudette to seek leave to file more than one proposed amendment in response to New Century's 12(c) motion, especially when the second motion for leave came *after* the pleading deadline and, more problematically, *after* the magistrate judge issued her report and recommendations. Neither condition is met.

---

[10] In citing the Second Proposed Amendment, Gaudette's objections mistakenly refer to his motion for leave as Docket 31 and the Second Proposed Complaint as Docket 31-1. The motion for leave was Docket 30, and the Second Proposed Complaint Docket 30-1.

### a. Gaudette has not adequately briefed error in the denial of leave to amend.

As explained above, the district court did not dismiss Gaudette's claims as asserted in the Second Proposed Amendment because they were never live claims. ROA.396–97.GRE.Tab4. Instead, it denied leave to file the amendment, stating that the Second Proposed Amendment "*once again* fail[ed] to state a plausible claim for relief under Title VII." *Id.* (emphasis added).

Gaudette's issues on appeal do not mention a denial of leave to amend. GBr.1–2. Nor does he mention a denial of leave in his prayer. GBr.54. In the body of his brief, he refers to a denial of leave to amend a handful of times. GBr.10, 15, 25, 27 n.8. But the only *argument* he makes about the district court's denial of leave to amend is that it was error to find it "futile," that Rule 15 requires courts to "freely grant leave to amend when justice so requires," and that his Second Proposed Amendment "exceeds the pleading requirement." GBr.15.

Under these circumstances, however, going straight to a futility or pleading-sufficiency analysis puts the cart before the horse. Gaudette's brief does not address the fact that his Second Proposed Amendment was filed *after* the pleading deadline, implicating Rule 16's "good cause"

standard. *See* ROA.36, 326–28 & n.3 (arguing below that he had good cause, but not giving any reason that was not available when he filed his First Proposed Amendment). Nor does he try to explain why it was proper for him to file more than one proposed amendment in response to New Century's 12(c) motion, especially *after* the magistrate judge's report and recommendation. Gaudette has therefore forfeited any argument that the district court erred in denying leave to file the Second Proposed Amendment. *See* Fed. R. App. P. 28(a)(8); *Kelley*, 110 F.4th at 817; *Rollins*, 8 F.4th at 397. The district court's denial of leave to file the Second Proposed Amendment, like its order granting judgment on the pleadings, can be readily affirmed.

### b. Alternatively, Gaudette has not shown he meets the requirements for obtaining leave to amend.

Gaudette's brief offers no explanation or argument addressing why his untimely motion was appropriate. It was not.

Rule 15, the only authority referenced by Gaudette, does not control when, as here, the pleadings are closed. ROA.36; FED. R. CIV. P. 16(b)(4). Instead, Gaudette was required to establish "good cause" under Rule 16. *See id.*; *E.E.O.C. v. Serv. Temps Inc.,* 679 F.3d 323, 334 (5th Cir. 2012) ("Under Fed. R. Civ. P. 16(b)(4), a party seeking to amend its pleadings

after a deadline has passed must demonstrate good cause for needing an extension"). The four factors relevant to good cause are: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Id.* (internal citations and quotations omitted).

Applying these four factors, Gaudette's brief does not provide any *explanation* whatsoever for the failure to timely move for leave to amend. He does not allege that the allegations in his Second Proposed Amendment were newly discovered or somehow hidden from him and his attorneys until after they sought leave to file the First Proposed Amendment and waited for the magistrate's ruling on that proposed amendment. And Gaudette has repeatedly minimized the *importance* of his Second Proposed Amendment through his repeated—albeit wholly conclusory—assertions that his Original Complaint contains sufficient allegations. *See* GBr.11; ROA.351, 379–80.GRE.Tab6.[11] He does not address the *prejudice* to New Century of having to chase a moving target,

---

[11] This fact also makes it hard for Gaudette to show that he can meet Rule 15's "interest of justice" standard.

or the *waste of judicial resources* such an approach incurs. Nor does he address the fact that a *continuance would not have cured* the prejudice because New Century had already incurred significant legal fees in moving for judgment on the pleadings based on the then-live pleadings.

Finally—apart from the Rule 15 and 16 analyses—no statute or rule permits a party to amend its pleadings in response to a magistrate judge's recommended disposition. Gaudette did not identify any such authority below, and he does not even address the problem on appeal. But to allow such a process would encourage parties to put forth minimal effort in response to Rule 12 motions when magistrate judges are assigned, confident that, if they do not prevail with the magistrate judge, they will be allowed to replead. Given the courts' caseload and limited resources, that kind of thinking should not be encouraged.

This Court recently addressed a similar situation in *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 293 (5th Cir. 2024). In that case, the defendant filed a 12(b)(6) motion, and in response the plaintiff filed an amended pleading, as the pleading deadline had not yet passed. *Id.* at 287. The defendant filed another motion to dismiss, which the district court granted. *Id.* The plaintiff then filed a motion to reconsider

and asked for leave to file a second amended complaint; this request for leave took place after the deadline to amend pleadings. *Id.* The district denied the motion to reconsider and for leave to file the amended complaint both because the plaintiff had failed to show good cause and because her proposed amendments were futile. *Id.* This Court held the district court "did not abuse its discretion in rejecting [the plaintiff's] bid to file a second amended complaint." *Id.* at 288; *see also United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (affirming district court's exercise of discretion in denying the plaintiff leave to amend when "[o]ne opportunity to amend, in the face of motions that spelled out the asserted defects in the original pleadings, was sufficient under the circumstances"). Indeed, "*pleadings review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right.*" *Id.* (emphasis added). *Shaw* and *Adrian* did not involve the additional considerations at play when a matter is referred to a magistrate judge, *see* 28 U.S.C. § 636(b)(1), but they certainly stand for

the proposition that a court need not permit a party to endlessly repleads.[12]

In sum, Gaudette has offered no reason for his failure to timely file his proposed amendment, providing yet another reason to affirm the district court's denial of leave to amend.

## B.   Gaudette's appeal fails on the merits, too.

Due to the procedural, presentation, and forfeiture issues set forth above, the Court need not address the merits of Gaudette's appeal. But if the Court chooses to address the merits, the Court will find them lacking, too—and find additional forfeiture problems. Gaudette simply cannot show that his allegations, even as pled in the Second Proposed Amendment, set forth plausible claims of discrimination and retaliation.

### 1.   Gaudette did not plausibly allege disparate treatment.

#### a. Gaudette's Original Pleading did not allege disparate treatment.

In its motion for judgment on the pleadings, New Century sought dismissal of "all Gaudette's claims": hostile work environment, constructive discharge, and retaliation. ROA.50, 54, 57, 59, 62. In

---

[12] New Century submits that these policy considerations are even more present when, as here, a party is represented by counsel.

response, Gaudette likewise described his claims as "gender-based discriminatory hostile work environment," "constructive discharge," and "retaliation." ROA.179. Misconstruing New Century's arguments, he inexplicably claimed he had not alleged "sexual harassment." But he did not point to any claim in his Original Complaint that New Century had left out.

Instead, in his objections to the report and recommendation, Gaudette argued *for the first time* that his Original Complaint alleged a cause of action for disparate treatment. ROA.368.GRE.Tab6. This argument was supported by no cites to the Original Complaint. *Id.*; ROA.352.GRE.Tab6 n.2. As the district court observed, it was "far from clear" that Gaudette had alleged any "separate disparate treatment claim." ROA.397.GRE.Tab4 n.1.

### b. The Second Proposed Amendment, even assuming it were proper, did not plausibly allege disparate treatment.

Gaudette's Second Proposed Amendment asserted a cause of action for disparate treatment, *see* ROA.344.GRE.Tab7, ¶63, but did not support that claim with distinct factual allegations, ROA.397.GRE.Tab4 n.1. The district court found that for "the same reasons the magistrate judge found Plaintiff's hostile work environment, retaliation, and

constructive discharge claims lacking, … any disparate treatment claim is similarly deficient." *Id.* (citing *Harris*, 510 U.S. at 21, and *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 875–76 (1984)).

The district court further found that Gaudette's disparate treatment claim was "mooted by his admission that he left his job voluntarily, combined with the Court's finding that he was not constructively discharged." *Id.*[13] (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019), as stating "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of [his] protected status") (cleaned up)). Gaudette challenges this conclusion, arguing that he "need only establish the denial of a 'term, condition, or privilege of employment' as his adverse action." GBr.25. But Gaudette's argument has no application to what he claims happened at New Century.

It is true that *Muldrow v. City of St. Louis* changed the standard for disparate-treatment claims. 601 U.S. 346 (2024). To establish an

---

[13] The First Circuit has similarly held that "*Muldrow* is not relevant to [a plaintiff's] Title VII discrimination claim" when the plaintiff "resigned from her position." *Stratton v. Bentley Univ.*, 113 F.4th 25, 38 (1st Cir. 2024).

adverse action now, a plaintiff need not establish a "heightened threshold of harm"–but he must still show a "'disadvantageous' change" in an "identifiable term or condition of employment." 601 U.S. at 350, 35–55. And this is exactly the point. Gaudette argues that the alleged *discrimination itself* was the adverse action, GBr.25, suggesting that could be the "disadvantageous change" in an "identifiable term or condition of employment" required under *Muldrow*. But he offers no authority for this circular reasoning. To the contrary, an employer's allegedly inadequate response to an incident of discrimination does "not cause any change at all in the terms, conditions, or privileges of [a] plaintiff's own employment." *Spann v. FedEx Freight, Inc.*, No. 3:23-CV-399-TSL-RPM, 2024 U.S. Dist. LEXIS 113983, at *8 (S.D. Miss. June 17, 2024). The "frustration" a plaintiff feels over the "perceived inadequacy of [the employer's] response (or lack of response)" is not "cognizable harm" for purposes of a discrimination claim, even under *Muldrow*'s relaxed standard. *Id.*; *cf. Muldrow*, 601 U.S. at 355 (forced transfer is disadvantageous change in identifiable term of employment); *Thomas v. JBS Green Bay, Inc.*, No. 24-1404, 2024 U.S. App. LEXIS 28449, at *2–3 (7th Cir. Nov. 8, 2024) ("some harm" alleged by complaints of deferred

training, denial of employee's preferred vacation schedule, and discriminatory assignment of shifts); *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497 (5th Cir. 2023) (en banc) (discriminatory assignment of weekend shifts). Finally, Gaudette's broad assertion that the "harm" he suffered "existed prior to his separation … and continues to exist regardless of the separation," GBr.25, further suggests that, whatever that nebulous harm might be, it was not to an identifiable term or condition of Gaudette's employment.

> **2.    Gaudette did not plausibly allege a hostile work environment.**

> > **a. *Muldrow* and *Hamilton* have no bearing on Gaudette's hostile-work-environment and constructive-discharge claims.**

> > > **i.    Gaudette has forfeited any argument that *Muldrow* and *Hamilton* have changed the standard for these claims.**

Gaudette spends much of his brief arguing that *Muldrow* and this Court's *Hamilton* decision change the well-established standards for hostile-work-environment and constructive-discharge claims. GBr.iii, 23, 26–29, 34–41, 50–51. Certainly these are significant decisions—just not for hostile-work-environment or constructive-discharge claims. *Hamilton* eliminated this Circuit's long-standing requirement that only "ultimate

employment decisions" could constitute "adverse employment actions" for purposes of disparate-treatment claims under Title VII. 79 F.4th at 497. And, as explained above, *Muldrow* held that although an employee alleging a discriminatory forced transfer must show "some harm," i.e. a "'disadvantageous' change" in an "identifiable term or condition of employment," he need not show that the injury satisfies a "heightened threshold of harm—be it dubbed significant, serious, or something similar." 601 U.S. at 350, 35–55.

Gaudette brought up *Muldrow* and *Hamilton* for the first time in his objections to the report and recommendation. ROA.368–69.GRE.Tab6.[14] Then, he addressed their significance only in regard to the disparate-treatment claim he also addressed for the first time in his objections. *See id.*; *see also infra* Part IV.B.1.a. In other words, despite the time Gaudette spends addressing these cases' alleged application to his hostile-work-environment and constructive-discharge claims, he did not make those arguments to the district court, and they are therefore

---

[14] *Hamilton* issued in August 2023, more than six months before Gaudette filed his response to New Century's motion for judgment on the pleadings. 79 F.4th 494 (Aug. 18, 2023). Gaudette offers no explanation for his failure to address that case at the appropriate time.

New Century acknowledges that *Muldrow* did not issue until April 17, 2024, a week after the report and recommendation was entered.

forfeited. *Rollins*, 8 F.4th at 397 (stating that an appellant "forfeits an argument by failing to raise it in the first instance in the district court").

### ii. *Muldrow* and *Hamilton* did not, in fact, change the hostile-work-environment or constructive-discharge standards.

Even if Gaudette had properly preserved this argument, it would be unsuccessful. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[15] And "a discriminatory and hostile work environment—when sufficiently severe or pervasive—can rise to the level of altering the terms, conditions, or privileges of employment for Title VII purposes." *Hamilton*, 79 F.4th at 503 (citing *Harris v. Forklift Sys.,* 510 U.S. at 21–22 (1993); and *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63–67 (1986)). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788

---

[15] Discrimination based on homosexuality falls under the category of discrimination based on sex. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020).

(1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

"[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII" and the "'mere utterance of an … epithet which engenders offensive feelings in an employee' would not affect the conditions of employment to sufficiently significant degree to violate Title VII." *Meritor*, 477 U.S. at 67 (approvingly quoting *Rogers* v. *E.E.O.C.*, 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957 (1972)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances"; thus, courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 22–23. The inquiry also contains an objective and subjective component, looking at whether "[t]he environment would reasonably be perceived, and is perceived, as hostile or abusive." *Id.* at 22.

The Supreme Court has repeatedly reaffirmed the standards set forth in *Meritor* and *Harris*. *Oncale*, 523 U.S. 75 (1998); *Faragher*, 524

U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Nat'l Rr. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Pa. State Police v. Suders*, 542 U.S. 129 (2004). So has the Fifth Circuit. *See, e.g.*, *Hamilton*, 79 F.4th at 503; *Clark v. City of Alexandria*, 116 F.4th 472, 479 (5th Cir. 2024).

Although *Muldrow* and *Hamilton* changed the standard for disparate-treatment claims, they did not change the landscape at all for hostile-work-environment cases. *See Muldrow*, 601 U.S. at 350 (disparate-treatment case alleging female plaintiff was forced to transfer to a less desirable position because she was a woman); *Hamilton*, 79 F.4th at 497 (disparate-treatment case alleging sex-based policy prohibited women, but not men, from taking full weekends off). Indeed, in *Hamilton* this Court specifically recited the long-standing hostile-work-environment standard—without criticism. 79 F.4th at 503. And as two district courts within this Circuit have observed, the "Supreme Court has defined the requirements of a hostile work environment claim over the course of many years … There is no suggestion in *Muldrow* that the Supreme Court intended to alter these requirements." *Zuniga v. City of Dallas Tex.*, No. 3:23-CV-2308-D, 2024 U.S. Dist. LEXIS 94199, *8 n.3

(N.D. Tex. May 28, 2024); *accord Preciado v. Recon Sec. Corp.*, No. EP-23-CV-00052-RFC, 2024 U.S. Dist. LEXIS 129443, at *4–7 & n.1 (W.D. Tex. July 23, 2024) (rejecting argument that *Muldrow* and *Hamilton* "no longer require sexual harassment claims to contain evidence of 'severe' or 'pervasive' harassment in order to be actionable" and quoting *Zuniga*); *see also, e.g.*, *Williams v. Memphis Light, Gas & Water*, No. 23-5616, 2024 U.S. App. LEXIS 17623, at *13–14, 19 (6th Cir. July 16, 2024) (applying *Muldrow* to disparate-treatment claim but not to hostile-work-environment claim). The new standards set forth in *Muldrow* and *Hamilton* simply do not apply to hostile-work-environment claims.

Nor do they apply to constructive-discharge claims. A hostile-work-environment claim is a "lesser included component" of the "*graver*" constructive-discharge claim. *Pa. State Police*, 542 U.S. at 149 (emphasis in original); *see also Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim."). Given that the standards are even higher for a constructive discharge claim, there is even more reason to reject Gaudette's unpreserved argument

that *Muldrow* and *Hamilton* changed the standard for constructive discharge claims.

### b. Gaudette's brief fails to engage with the actual law governing hostile-work-environment claims.

Beyond his incorrect and forfeited argument that *Muldrow* and *Hamilton* apply, Gaudette's next hostile-work-environment argument consists of a lengthy bullet-point list of allegations from the Second Proposed Amendment and an assertion that "Gaudette provided a particularly helpful legal analysis in his Objections." GBr.29–31. But Gaudette does not tether the allegations to any legal analysis in his brief. GBr.29–31; *see also* GBr.34 (arguing that the "Court could still find that Gaudette has met the old heightened tests for gender discrimination" but not citing any case law or tying any of his allegations to that law). Any argument that Gaudette adequately pled a hostile-work-environment claim under existing law is, once again, forfeited. *See Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001) (finding issue abandoned when party did not brief it on appeal but rather attempted to adopt and incorporate by reference "its argument below").

Instead, Gaudette chooses to rest on his argument that the entire framework for assessing hostile-work-environment claims must be

thrown aside. GBR.32–34. Besides the *Muldrow* and *Hamilton* arguments debunked above, he also asserts that the "common denominator" among the Supreme Court's hostile-work-environment cases is, "at its base, ensuring that the employer has reasonable notice of the harassment or hostile work environment." GBr. 32–33 (citing *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022), for recitation of elements). And, he asserts, when an employer is aware of the harassment, there is no need to apply the "heightened tests" (otherwise known as the existing law.)[16] But the employer-knowledge element presupposes that there is a hostile work environment of which the employer could have notice.

Moreover, employer knowledge is only one element of a hostile-work-environment claim. *See* GBr.33; *see Saketkoo*, 31 F.4th at 1003. An employee experiences actionable harassment based on sex only when the harassment affects a term, condition, or privilege of employment. *Id.* To "affect a term, condition, or privilege of employment, the harassment

---

[16] Gaudette defines "heightened tests" as follows: "'sufficiently severe or pervasive,' 'create an abusive work environment,' 'physically threatening or humiliating,' 'isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" GBr.33.

must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Id.* The employer's knowledge does not eliminate the need for that test—and Gaudette cites no authorities stating that it does. GBr.32–34.

Finally, Gaudette complains that it was "improper" for the district court to "cite to and rely upon" *Oncale*, 523 U.S. at 78. GBr.28 (citing ROA.258). He suggests, without explanation, that same-sex sexual harassment cases like *Oncale* "create[e] a potentially even higher bar to reach than is actually required of Gaudette …." *Id.* But *Oncale* imposed the same standard on same-sex harassment cases that applies to all hostile-work-environment cases: "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Oncale*, 523 U.S. at 78 (quoting *Harris*, 510 U.S. at 21).

### c. Alternatively, Gaudette's pleadings did not plausibly allege a hostile-work-environment claim under the relevant test.

As Gaudette did not brief whether his allegations meet the existing law, *see supra* Part IV.B.2.b, New Century will keep its argument here

short. The long-standing test for a hostile-work-environment claim is set forth above in Part IV.B.2.a.ii. In fleshing out those now bedrock principles, the Supreme Court and the Fifth Circuit have delineated additional parameters.

"[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Saketkoo*, 31 F.4th at 1003 (quoting *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 n.3 (5th Cir. 1998) (in turn quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998))). Simple teasing and offhand comments are not enough to establish a hostile-work-environment claim. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347–48 (5th Cir. 2007). Nor are sporadic comments enough—even if demeaning and abrasive, and even if from a supervisor. *Saketkoo*, 31 F.4th at 1004 (five offensive comments from supervisor over four years were "neither severe nor pervasive"). Indeed, even being subjected to one "offensive utterance … every few days" is not actionable under Title VII if the utterances "were not severe, physically threatening, or humiliating." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009).

The conduct Gaudette alleges does not survive these tests, no matter how he characterizes his allegations. Distilled, the factual allegations relevant to Gaudette's hostile-work-environment claim (in his untimely Proposed Second Amendment) consist of:[17]

- Four years of a positive, professional, and respectful working relationship with New Century during a time when New Century and Gaudette's coworkers were aware Gaudette was gay. ROA.332, ¶¶7–10; ROA.334, ¶15; ROA.338, ¶39; ROA.341, ¶49.

- One single offensive comment made by a coworker during a meeting Gaudette did not attend. ROA.334, ¶¶16, 18-20; ROA.335, ¶21–24; ROA.336, ¶29.

- Several coworkers' laughter in response to the comment. ROA.335, ¶25.

- Gaudette's learning of the meeting from another gay male employee, whom Gaudette described as a virtual stranger. ROA.65; ROA.338, ¶38.[18]

- Gaudette's supervisor's failure to react during the meeting, followed by five days of inaction by New Century's

---

[17] All the record cites in this portion of the brief are to the Second Proposed Amendment, which is found at Tab 7 of Gaudette's record excerpts, and Gaudette's resignation email, which is found at Tab 2 of New Century's record excerpts.

[18] The Second Proposed Amendment alleges mistreatment of this same employee, who told Gaudette he complained to management the day after the meeting and was pressured to resign. ROA.336–38, ¶¶30–34, 37. But, as explained in the following section, Gaudette cannot rely on what might have happened to this other employee—Gaudette was not present for any of his interactions with management—in establishing his own hostile-work-environment claim. *See infra* Part IV.B.1.d.

management. ROA.335, ¶26; ROA.336, ¶28; ROA.339–40, ¶¶43–47. (Gaudette does not allege that he ever complained to New Century.)

- Gaudette's feelings of betrayal and humiliation. ROA.333–34, ¶13; ROA.338–39, ¶40.

- Gaudette's resignation five days after the meeting and four days after he learned about it. ROA.65; ROA.341, ¶50.[19]

These facts, even when taken as true, do not establish a hostile-work-environment claim. Instead, they describe an isolated incident—one offensive utterance, immediately followed by laughter from coworkers, and a five-day period of inaction by New Century—that was not "extremely serious." *Saketkoo*, 31 F.4th at 1003; *Harris*, 510 U.S. at 22–23. The conduct was the opposite of frequent or pervasive: the discriminatory conduct occurred *once* in a *four-year* period otherwise characterized as positive and professional. *Id.* And there is no allegation that this alleged hostility unreasonably interfered with Gaudette's work performance. *Id.* at 23; *see also* ROA.339.GRE.Tab7, ¶42. Looking at "all the circumstances," as the Supreme Court has directed, these facts do not

---

[19] Gaudette further complains about New Century's conduct, *after he resigned*, in attempting to convince him to return to work. ROA.342, ¶51–52. This alleged conduct, too, is irrelevant, as explained in the following section.

describe a hostile work environment that was "so severe or pervasive" as to alter the terms and conditions of Gaudette's employment. *Harris*, 510 U.S. at 21–22.[20]

### d. A brief period of management inaction, which is all Gaudette has pled, does not create a hostile work environment.

Gaudette desperately tries to make more out of New Century's conduct than his pleading or case law support. And this makes sense, given his own allegations. His complaints are primarily about *inaction*: his supervisor's failure to speak up during the meeting, and the company's failure to respond in the next few days. He does not allege that his manager made the offensive comment or even that he laughed in response.

His complaints about New Century's *actions*, as opposed to its inactions, are focused on conduct that took place *after* he resigned or conduct involving *another employee*. But Gaudette's allegations about

---

[20] The "terms and conditions" Gaudette alleges were altered are his right to "trust your employer to tell the truth and protect you from outrageous discrimination." ROA.342.GRE.Tab7, ¶53. If protection from discrimination were viewed as a "term or condition," then every plaintiff asserting a discrimination claim would have alleged an actionable adverse action. As pointed out earlier, Gaudette offers no authority for this circular reasoning, or for the idea that "trust" in an employer qualifies as a term or condition either.

New Century management's mistreatment of another employee—none of which Gaudette personally witnessed or experienced—cannot support *Gaudette's* hostile-work-environment claim. *Saketkoo*, 31 F.4th at 1004 ("the fact that other women at the School may have experienced severe or pervasive treatment does not save Dr. Saketkoo's claim"); *Septimus v. Univ. of Hous.*, 399 F.3d 601, 612 (5th Cir. 2005) (conduct complained of by other women but not personally experienced by plaintiff did not support plaintiff's harassment claim). And his allegations about anything New Century may have done *after* he quit are irrelevant to his hostile-work-environment claim, as that alleged conduct took place after the employment relationship ended and therefore could not have affected a term or condition of employment.

Stepping back to the alleged inaction that might arguably be relevant to his claim, Gaudette misstates Supreme Court and Fifth Circuit precedent. He characterizes *Oncale* as a case in which the employer "was only involved in failing to remediate the harassment …." GBr.28. But this is a misreading of *Oncale*, in which the plaintiff's supervisors "forcibly subjected [him] to sex-related, humiliating actions," one of his supervisors physically assaulted him in a sexual manner, *and*

"complaints to supervisory personnel produced no remedial action." 523 U.S. at 78.

Gaudette claims that this Court has held that a supervisor's "inactions in the face of discriminatory slurs made in front of a group of employees is certainly a significant factor to be considered in a 'totality of circumstances' contributing to a hostile work environment." GBr.46 (citing *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022)). But *Woods* case stands for no such proposition—and even if it did, it would be distinguishable. In *Woods*, the plaintiff's supervisor was the one who "directly called him a 'Lazy Monkey A___ N____," probably the most offensive word in all of the English language. 29 F.4th at 285. *Woods* has nothing to do with management *inaction* in the face of a different offensive comment.

### 3.  Gaudette's pleadings did not plausibly allege constructive discharge.

If the Court reaches the merits and concludes, as it should, that Gaudette has failed to plead a viable hostile-work-environment claim, it must also conclude that he has failed to plead a legitimate constructive-discharge claim because "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim."

*Brown,* 237 F.3d at 566; *Pa. State Police*, 542 U.S. at 149. If the hostile-work-environment claim falls, so too does the constructive-discharge claim. *See id.*

Moreover, to prevail on his constructive-discharge claim, Gaudette must show that his "working conditions" were so "intolerable" that a "*reasonable person* would have felt compelled to resign." *Id.* at 147 (emphasis added).[21] To determine whether working conditions are sufficiently intolerable, this Court has considered whether the plaintiff suffered "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022). "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge …." *Id.* at 925 (quoting *Brown*, 237 F.3d

---

[21] Gaudette's refusal to engage with existing law continues for this claim, too. At one point, Gaudette acknowledges that "compelled to resign" is the relevant standard, GBr.42, but later he argues it was error for the district court to "requir[e] a reasonable employee to feel 'compelled' to resign." GBr.44–45 (calling that holding of the district court "terribly and unreasonably heightened and unfair without any legal reasoning to support it").

at 566). Gaudette relies on two aggravating factors—"badgering, harassment, or humiliation by the employer *calculated to encourage the employee's resignation*," and "*offers of early retirement that would make the employee worse off*." GBr.47–48 (emphasis added). But these factors find no support whatsoever in his allegations. And Gaudette offers nothing more than his own *ipse dixit* to argue that this Court should consider an additional, amorphous factor of his own creation. GBr.48.[22]

Importantly, the Fifth Circuit has recognized that "[i]n the constructive discharge context, 'part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast.'" *Aryain v. Wal-Mart Stores Tex. LP,* 534 F.3d 473, 481-82 (5th Cir. 2008) (*quoting Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 310 (5th Cir. 1987)) (dismissing plaintiff's constructive-discharge claim when plaintiff resigned "just a day or two" after alleged negative treatment, which did not give the employer an adequate opportunity to improve her situation). Gaudette's is a classic case of jumping to conclusions too fast: He resigned within five days of a single

---

[22] Nor does Gaudette offer any authority to support his suggestion that one other employee's decision to resign demonstrates the reasonableness of his own decision.

incident, after four years of a respectful, professional, and positive employment relationship, and without once addressing the matter directly with his supervisor, higher management, or human resources. This is not behavior this Court should condone or encourage.

### 4. Gaudette did not plausibly allege—or sufficiently brief—retaliation.

Gaudette's brief spends a mere two pages on his retaliation claim. GBr.52–53. He cites a single case once, but only to assert that the district court "accurately cited" its standard but did not apply it—and then he once again refers to his briefing below without briefing those same issues on appeal. *See* GBr.52–53 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). He refers repeatedly to a "*quid pro quo* offer," even though that is a harassment concept, without explaining how it applies in the retaliation context. *See, e.g.*, *Higgins v. Lufkin Indus.*, 633 F. App'x 229, 232, 234 (5th Cir. 2015) (per curiam) (analyzing *quid pro quo* harassment claim separately from retaliation claim). Retaliation is yet another issue Gaudette has forfeited through his inadequate briefing. *See Peel*, 238 at 398.

If the Court addresses Gaudette's contention that his pleading was sufficient, it will see that Gaudette did not viably plead this claim, even

in his Second Proposed Amendment. To assert a cause of action for retaliation in violation of Title VII, a plaintiff must allege plausible facts supporting three elements: 1) he engaged in activity protected under Title VII; 2) an adverse employment action occurred; and 3) a causal link existed between the protected activity and the adverse action. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004).

With regard to the first element—the one Gaudette does not even acknowledge—protected activity can consist of either: "(1) opposing any practice deemed an unlawful employment practice by Title VII (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII (the 'participation clause')." *Ellis v. Compass Grp. USA, Inc.,* 426 F. App'x 292, 296 (5th Cir. 2011) (internal citations omitted); *see also* 42 U.S.C. § 2000e-3(a). Gaudette claims New Century sent the letter he characterizes as unlawful retaliation on October 5, 2021, and he alleges he filed his E.E.O.C. charge on January 5, 2022—so he can only be complaining about retaliation for his internal opposition to the September 15, 2021 meeting. But as this Court has made clear, "the opposition clause does not require opposition alone; it requires *opposition*

of a practice made unlawful by Title VII." *Taliaferro v. Lone Star Implementation & Elec. Corp.,* 693 F. App'x 307, 311 (5th Cir. 2017) (per curiam) (emphasis original) (*citing E.E.O.C. v. Rite Way Serv., Inc.,* 819 F.3d 235, 240 (5th Cir. 2016)).

While Gaudette need not prove that the conduct he opposed rose to the level of a Title VII violation, he "must at least show a reasonable belief that it did." *Id.* at 237. "In determining what constitutes a reasonable belief that a Title VII violation has occurred," this Court has "emphasized the importance of the severity and frequency of the alleged conduct." *Taliaferro,* 693 F. App'x at 311. As explained above, the alleged conduct here was neither severe nor frequent.

Even if the Court concludes that Gaudette did engage in protected conduct, Gaudette fails to plead any facts plausibly showing that an *adverse action* occurred *because of* his allegedly protected activity (the second and third elements of a retaliation claim). Indeed, Gaudette relies on a single allegation to support his retaliation claim: the letter in which New Century expressed concern that Gaudette may have violated HIPAA and reminded him of his obligations under that federal law.

ROA.11.NCRE.Tab1, ¶20; ROA.67.NCRE.Tab3; ROA.343.GRE.Tab7, ¶57.

In the retaliation context, an "adverse employment action" is one that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Contrary to Gaudette's assertions, the letter (which speaks for itself) does not threaten Gaudette with the loss of his nursing license. *Id.* It merely says that, as a nurse, Gaudette should understand HIPAA's patient confidentiality requirements. The letter also truthfully states that violating HIPAA can carry severe penalties. *See generally* 45 C.F.R. Part 160, Subparts C, D, and E. If Gaudette was not violating HIPAA, then he had nothing to fear. Notably, Gaudette does not claim any follow up from New Century, the nursing board, or other authorities (because there was none). Without more, the letter simply would not have dissuaded a reasonable employee from pursuing discrimination claims. There is no adverse action.

Moreover, even if the letter could somehow be considered an adverse action, Gaudette pleads no facts suggestive of any causal connection between his alleged opposition to unlawful behavior and the

letter. No facts show the author or signer of the letter even knew Gaudette had allegedly engaged in protected conduct. The letter is signed by a paralegal who is not mentioned anywhere else in Gaudette's complaint. There are no references in the letter to Gaudette's complaint about allegedly discriminatory behavior, nor are there any admonitions (even veiled) not to pursue a discrimination claim. A reasonable person would view the letter as demanding that Gaudette not violate HIPAA and stating that Gaudette and New Century will be able to peacefully coexist if he abides by that admonition.

While it is, perhaps, theoretically *conceivable* that the letter was a heavily veiled threat intended to dissuade Gaudette from pursuing a claim or charge of discrimination, Rule 12's plausibility standard requires more. *See Twombly,* 550 U.S. at 570.

## V.   Conclusion and Prayer

At the end of the day, the dismissal of Gaudette's claims should stand. Even setting aside the forfeiture of the various issues raised on appeal (which would be inappropriate), the simple truth is that no amount of artful pleading could ever resuscitate these claims. A single inappropriate joke by a coworker should not arm an employee who

enjoyed years of contented, respectful employment with claims for hostile work environment, constructive discharge, or retaliation.

The Court should affirm the district court's order.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

By: */s/ Sara E. Janes*
    Sara E. Janes
    State Bar No. 24056551
    sjanes@wshllp.com

Kevin S. Mullen
State Bar No. 24032892
**THE MULLEN FIRM PLLC**
500 N. Capital of Texas Highway
Building 2
Austin, Texas  78746
512.537.7959
kevin@themullenfirm.com

**ATTORNEYS FOR APPELLEE**
**ANGEL HEART HOSPICE, L.L.C. DBA**
**NEW CENTURY HOSPICE,**
**INCORPORATED**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

☐ U.S. Mail, First Class
☐ Certified Mail
☐ Facsimile
☐ Federal Express
☐ Hand Delivery
☒ ECF (electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants)

on this 22nd day of November, 2024, to wit:

Robert Notzon
THE LAW OFFICE OF ROBERT NOTZON
1502 West Avenue
Austin, Texas  78701
512.474.7563
robert@notzonlaw.com

**ATTORNEYS FOR APPELLEE**

/s/ *Sara E. Janes*
Sara E. Janes

# CERTIFICATE OF COMPLIANCE

I certify that:

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,406 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word 16 in 14-point, proportionally spaced Century Schoolbook font.

*/s/ Sara E. Janes*
Sara E. Janes