No. 24-50523

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

DAVID EDWARD GAUDETTE,

Plaintiff-Appellant

V.

ANGEL HEART HOSPICE, L.L.C., DOING BUSINESS AS
NEW CENTURY HOSPICE, INCORPORATED,

Defendant-Appellee

_____

On Appeal from the United States District Court for the
Western District of Texas, Austin Division Case No. 1:23-CV-769-RP

_____

## REPLY BRIEF OF APPELLANT

_____

Robert S. Notzon
LAW OFFICE OF ROBERT S. NOTZON
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
Robert@NotzonLaw.com
(512)-474-7563

_____

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ II

INDEX OF AUTHORITIES ................................................................. III

SUMMARY OF REPLY ........................................................................ 1

ARGUMENT....................................................................................... 1

NEW CENTURY'S CLAIMS GAUDETTE FORFEITED APPEAL RIGHTS ARE
ULTIMATELY UNAVAILING ........................................................... 1

    *A.  Gaudette Challenged the Report and Recommendations*............. *1*

    *B.  Gaudette Did Not Forfeit His Appeal of the Denial of Leave to
Amend* ............................................................................................ *4*

    *C.  Gaudette Did Not Forfeit His Right to Argue the Application of
Hamilton and Muldrow to his Hostile Work Environment and
Constructive Discharge Claims*....................................................... *5*

THE DISMISSAL OF GAUDETTE'S DISPARATE TREATMENT CLAIM AND
DENIAL OF LEAVE TO AMEND SHOULD BOTH BE REVERSED AND
REMANDED TO THE DISTRICT COURT ........................................... 7

NEW CENTURY'S BRIEF CONTINUES ITS PATTERN OF MISSTATING
GAUDETTE'S PLEADINGS ............................................................11

GAUDETTE'S PLEADINGS SUFFICIENTLY SUPPORT HIS HOSTILE WORK
ENVIRONMENT AND CONSTRUCTIVE DISCHARGE CLAIMS, ESPECIALLY IN
LIGHT OF *HAMILTON* AND *MULDROW*........................................14

GAUDETTE ADVOCATES FOR THE APPLICATION OF *HAMILTON* AND
*MULDROW* TO HOSTILE WORK ENVIRONMENT AND CONSTRUCTIVE
DISCHARGE COMPLAINTS IN SPECIFIC CIRCUMSTANCES IN KEEPING WITH
ESTABLISHED PRECEDENTS ...........................................................16

    Retaliation ....................................................................................22

CONCLUSION .............................................................................. 24

# INDEX OF AUTHORITIES

## CASES

*Atl. Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1293 (5th Cir.1986) ---------------------------------------------------------------- 6

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) ------------------------------------------------------------------- 9

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61, 103 S. Ct. 400, 403, 74 L. Ed. 2d 225 (1982) (per curiam)------------------------------ 5

*Guerra v. Bellino*, 703 F. App'x 312, 317(fn) (5th Cir. 2017)---------------- 4

*Lampton v. Diaz*, 639 F.3d 223, 227 n. 14 (5th Cir.2011)------------------- 5

*Levron v. Gulf Int'l Marine, Inc.*, 854 F.2d 777, 780 (5th Cir. 1988) ----- 5

*New Orleans Depot Servs., Inc. v. Dir., Off. of Worker's Comp. Programs*, 718 F.3d 384, 387–88 (5th Cir. 2013) (*en banc*) ---------------------------- 5

*Texas v. United States*, 730 F.2d 339, 358 n. 35 (5th Cir.1984) ----------- 6

*United States v. Scroggins*, 599 U.S. 433, 446 (5th Cir. 2010) ------------- 4

*Williams v. Treen*, 671 F.2d 892 (5th Cir. 1982) ----------------------------- 5

iii

## SUMMARY OF REPLY

New Century's brief fails to meaningfully address several key issues raised by Gaudette. In particular, New Century spends a substantial portion of its brief unsuccessfully attempting to establish forfeiture. New Century also continues to misrepresent Gaudette's pleadings when this is a de novo review of the dismissal on the pleadings that should be taken as true with all reasonable inferences drawn in Gaudette's favor from a totality of the circumstances based upon Gaudette's complete pleadings. New Century also improperly dismisses recent precedent and instead relies on distinguishable cases. This reply identifies the issues that New Century inadequately addresses and incorporates additional legal authorities to substantiate Gaudette's right to appeal and his arguments.

## ARGUMENT

### New Century's Claims Gaudette Forfeited Appeal Rights Are Ultimately Unavailing

Given that this Court's jurisdiction must be resolved prior to considering the merits of this appeal, Gaudette addresses New Century's forfeiture claims first.

### A. Gaudette Challenged the Report and Recommendations

New Century made the unsupportable assertion that Gaudette did not object to the Report and Recommendation. Dkt.26(p.16-17) However, a simple review of Gaudette's objections shows that he objected to every basis used to try to support the dismissal of three of

1

Gaudette's claims that were within the Report and Recommendation.[1] Gaudette also objected to the Report and Recommendation for its failure to analyze or provide reasoning to support dismissal of the disparate treatment claim referencing both the Original Complaint and the second proposed[2] First Amended Complaint.[3]

New Century provided no legal support nor specific explanations for its conclusory assertions that Gaudette inadequately briefed the Report and Recommendation rulings or for the assertion that Gaudette forfeited his right to appeal due to failing to "attack" the Report and Recommendation by focusing primarily on his proposed First Amended Complaint. Dkt.26(pp.15-19)[4]

Given that this is an appeal of the District Court's de novo rulings and not of the Report and Recommendation, New Century's assertion makes little sense. The District Court specifically found that Gaudette

---

[1] Dkt.23-GRETab6.ROA.351,356-70. Gaudette's objections to the Report and Recommendation found within these cited pages included many issues. Gaudette lists some of the more critical issues for the Court's convenience, here: misstates Gaudette's allegations, fails to consider totality of the circumstances, parses allegations, weighs allegations, relies on summary judgment cases, finds no hostility when this Court holds such issues are jury questions, ignores this Court's holding that a supervisor's inaction in front of coworkers is significant, ignores the false denials, indicates application of incorrect standard, finds that Gaudette didn't give New Century chance to cure despite New Century's actions foreclosing any question of New Century curing what it denies happened, relies on old cases with higher burdens than *Hamilton* and *Muldrow*, and misrepresents that there were only three claims plead by Gaudette.

[2] Gaudette shall refer to his "second proposed First Amended Complaint" through this Reply brief as merely "First Amended Complaint."

[3] Referencing the Original Complaint (Dkt.23- ROA.351,368.GRETab6.) and referencing the First Amended Complaint. Dkt.23- ROA.351-2,362,364-5.GRETab6.

[4] The two cases cited on p19 of New Century's brief, do not stand for its proposition or circumstances at issue with Gaudette's Objections, the District Court's de novo consideration of Gaudette's objections, the motion for leave to amend, nor the de novo review on appeal.

timely filed his objections and therefore met the requirement for the District Court's de novo review of the Report and Recommendation. Dkt.23- ROA.395.GRETab4. Therefore, the rulings on appeal are the District Court's, regardless of whether the District Court relied largely on the Report and Recommendation. Again, as set out above, Gaudette substantially challenged, criticized, and objected to the Report and Recommendation's errors.

New Century did not provide any legal basis to justify its aggressive assertion that Gaudette forfeited his right to appeal all issues because he substantially focused his arguments to the District Court using his First Amended Complaint. The District Court exercised its broad discretion to consider Gaudette's second motion for leave to amend and it exercised that discretion and denied leave to amend based only upon a finding of "futile," albeit in error, and not due to any impediment like the passage of the amendment deadline, that the Magistrate had not reviewed it, or any other basis proffered by New Century to no avail and without legal support.

Now that this Court has the de novo review, Gaudette has the right to respectfully and appropriately request a reversal of both the denial of leave to amend and the dismissals of his four claims. Dkt.23-Tab7

**B. Gaudette Did Not Forfeit His Appeal of the Denial of Leave to Amend**

New Century made an assertion that Gaudette forfeited his appeal of the denial of leave to amend with the First Amended Complaint for several reasons including because Gaudette did not brief it. Dkt.26(pp.19-26) However, a simple review of Gaudette's brief shows that Gaudette repeatedly argued, briefed, cited to legal authority, and requested relief from this Court to reverse the denial of leave to amend.

Although Gaudette admits to the oversight of not including the denial of leave to amend as one of his listed issues on appeal in his brief, there is no "gotcha" rule requiring such a designation under threat of forfeiture. Instead, the test has been consistently held by this Court to be whether the issue was adequately briefed on appeal.[5]

Adequate briefing requires that a party "press" an issue, which requires raising the argument and citing relevant legal principles. *Id.* Gaudette adequately pressed his appeal of the denial of leave to amend with the First Amended Complaint in his brief including cites to legal authority, and the District Court's consideration of Gaudette's motion for leave to amend. Gaudette would also point to the District Court's ruling of "futile" and no other legal or procedural restriction.[6]

On the other hand, New Century, itself, has forfeited its right to raise on appeal any complaint that it may have regarding the District Court's decision to rule on Gaudette's motion for leave to amend with

---

[5] *Guerra v. Bellino*, 703 F. App'x 312, 317(fn) (5th Cir. 2017) (citing to *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010))

[6] Dkt.22(pp.6,7,10,15,22,25,27)

his First Amended Complaint and any bases or reasoning that the District Court used in exercising its broad discretion to make that decision. That is, New Century did not file a notice of appeal or cross appeal on any issue and therefore forfeits any right to raise any issue in this appeal.[7]

### C.    Gaudette Did Not Forfeit His Right to Argue the Application of *Hamilton* and *Muldrow* to his Hostile Work Environment and Constructive Discharge Claims

New Century asserts that Gaudette forfeited any argument on appeal that *Hamilton* and *Muldrow*[8] should be applied to his Hostile Work Environment and Constructive Discharge Claims because Gaudette did not argue those points in his objections to the Report and Recommendation. Dkt.26(pp.30-32)

Gaudette acknowledges that he did not argue the point below, but Gaudette is not required to do so to have a right to argue these points on appeal because there is an exception under 5th Circuit precedent that applies in this circumstance.

Gaudette does not contest the well-settled precedent against appellate arguments on matters that were not first presented at the

---

[7] *Levron v. Gulf Int'l Marine, Inc.*, 854 F.2d 777, 780 (5th Cir. 1988) ("A timely notice of appeal is mandatory and jurisdictional." Citing to *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61, 103 S. Ct. 400, 403, 74 L. Ed. 2d 225 (1982) (per curiam)). See also, *Williams v. Treen*, 671 F.2d 892 (5th Cir. 1982) ("This Court has consistently held that compliance with Rule 4(a) is a mandatory precondition to the exercise of jurisdiction by the appellate court.")

[8] *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2023) and *Hamilton v. Dall. Cty.*, 79 F.4th 494 (5th Cir. 2023)

District Court level.[9] However, there are exceptions to this restriction such that it does not apply to purely legal arguments as with Gaudette's legal argument that *Hamilton* and *Muldrow* should be applied to his hostile work environment and constructive discharge claims. Specifically, this Court held that "a well-settled discretionary exception to the waiver rule exists where a disputed issue concerns "a pure question of law." *Id.* (citing to *Texas v. United States*, 730 F.2d 339, 358 n. 35 (5th Cir.1984) (explaining that, "[t]he decision whether to apply the general rule is, however, within our discretion, and it is a matter to be determined on a case-by-case basis."); see also, *Atl. Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1293 (5th Cir.1986) ("An issue raised for the first time on appeal generally is not considered unless it involves a purely legal question or failure to consider it would result in a miscarriage of justice.)

Gaudette's arguments on appeal regarding the application of *Hamilton* and *Muldrow* to his hostile work environment and constructive discharge claims are purely additional legal argument to support and justify his prior argument presented to the District Court to retain both his hostile work environment and constructive discharge claims. On appeal, Gaudette is merely providing this Court with an additional legal basis to retain these two claims which is the same issue that Gaudette argued for below. Therefore, these arguments cannot

---

[9] *New Orleans Depot Servs., Inc. v. Dir., Off. of Worker's Comp. Programs*, 718 F.3d 384, 387–88 (5th Cir. 2013) (*en banc*) (This Court does "not consider issues on appeal that were not presented and argued before the lower court.") (citing to *Lampton v. Diaz*, 639 F.3d 223, 227 n. 14 (5th Cir.2011)).

reasonably be considered new issues raised on appeal. Dkt.23-ROA.358-66.GRE.Tab6.

Gaudette respectfully requests, in the interest of justice, that this Court reject New Century's claims of forfeiture and accept jurisdiction of Gaudette's appeal seeking the de novo review and reversal of the District Court's denial of leave to amend with the First Amended Complaint and the dismissals of each of Gaudette's four claims (disparate treatment, hostile work environment, constructive discharge, and retaliation).

### The Dismissal of Gaudette's Disparate Treatment Claim and Denial of Leave to Amend Should Both Be Reversed and Remanded to The District Court

Gaudette's brief argues that his Original Complaint, along with his First Amended Complaint, contain sufficient allegations supporting a distinct disparate treatment claim. Dkt.22(pp.10-11) Gaudette asserted that the District Court erred in dismissing the disparate treatment claim without having provided any reasoned opinion or discussion regarding the application of *Hamilton* and *Muldrow* to this claim, which were the controlling precedents. (*Id.*) Gaudette respectfully asserts that it was further error to deny leave to amend with the First Amended Complaint as "futile" without any review or discussion of the disparate treatment claim in terms of either the contents of the Original or the First Amended Complaint and the much lower burdens in *Hamilton* and *Muldrow*. *Id.*

Gaudette's brief listed the five references to his distinct disparate treatment claim in his Original Complaint and the eleven references to it in his First Amended Complaint.[10] *Id.*

This argument that the District Court did not provide a reasoned explanation for its dismissal of Gaudette's disparate treatment claim is different from Gaudette's arguments regarding his other three claims since the District Court relied entirely on the reasoning in Report and Recommendation, albeit in error, to support those dismissals.

However, the Report and Recommendation made no mention of Gaudette's disparate treatment claim, pleadings, or legal analysis. Dkt.23-GRETab5.ROA.350-370. Therefore, the District Court could not rely on any reasoning from the Report and Recommendation that did not exist to support the District Court's dismissal of the disparate treatment claim. Dkt.23-GRETab4.ROA.395-397.

The only references made by the District Court to Gaudette's disparate treatment claim were restricted to a sole footnote stating the following:

- "it was far from clear" that Gaudette had plead a distinct disparate treatment claim, Dkt.23. ROA.397.GRE.Tab4.

---

[10] Gaudette would argue that given the District Court's language used in its holding that "it is far from clear that [Gaudette] alleges any separate disparate treatment claim," that the most critical references are those that list all four of Gaudette's claims together in one sentence as four distinct claims. For example, in the Original Complaint, Gaudette plead, "As a result of New Century's gender-based discriminatory actions, hostile work environment, constructive discharge, and retaliatory actions against Gaudette, …." (Dkt.22(p.10 citing to ROA.10) and in his First Amended Complaint, Gaudette plead, "58. As a result of New Century's gender-based discriminatory actions, hostile work environment, constructive discharge, and retaliatory actions, Mr. Gaudette suffered and continues to suffer …" (Dkt.22(p.11 citing to ROA.343.GRETab7.)

- relying on "the same reasons the [Report and Recommendation] found [Gaudette's] hostile work environment, retaliation, and constructive discharge claims lacking" to support the [District] Court's finding that "any disparate treatment claim is similarly deficient," *Id.* and
- and that all claims "fail to allege a violation of Title VII." *Id.*

The District Court also cited to a hostile work environment case (*Harris*[11]) and a class action case (*Cooper*[12]) without any explanation or analysis apparently to support its dismissal of the disparate treatment claim. *Id.*

There is no legally justifiable reason to rely on those two legally distinct claims to dismiss a disparate treatment claim on the pleadings; even if only referring to whether "it was clear" that the claim was plead given the different pleading standards and the two new *Hamilton* and *Muldrow* opinions. Considering the absence of any analysis from the District Court of Gaudette's disparate treatment claim with respect to the holdings in *Hamilton* and *Muldrow*, there is even less of a legal basis to affirm that holding by the District Court.

The District Court also made the finding in that footnote that Gaudette "mooted" his disparate treatment claim by "his admission that he left his job voluntarily, combined with the [District] Court's finding that [Gaudette] was not constructively discharged" and citing to *Cicalese*.[13] *Cicalese* is a disparate treatment case, but predates *Hamilton* and *Muldrow*. However, *Cicalese* found that the lower court improperly held the plaintiffs to a heightened pleading standard, not

---

[11] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)

[12] *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875–76 (1984)

[13] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)

unlike many of the holdings in this case. Therefore, *Cicalese* actually supports Gaudette's request for reversal and not affirmance of the dismissals. The cite to *Cicalese* remains unexplained. Additionally, the words "moot," "mooted," and "voluntarily" do not occur in *Cicalese* and there is no reference to constructive discharge, either. There is no legal support for Gaudette's disparate treatment claim being "mooted."

Given that this de novo review is at the pleading stage, Gaudette only "admits" to having left his job in constructive discharge due to an intolerable environment, which should be taken as true, and all reasonable inferences drawn in his favor and not disregarded as a "voluntarily" decision. It simply does not make sense that Gaudette's disparate treatment claim would somehow go away. The discrimination happened while he was employed and being fired, quitting, or even death would not change the existence of the claim.

Regardless, the District Court provided no viable legal basis to have dismissed Gaudette's disparate treatment claim or to deny leave to file the First Amended Complaint that the District Court denied as being "futile" without providing any analysis for that finding under the applicable standards as set out in *Hamilton* and *Muldrow*.

New Century's brief provided no substantive defense to these arguments by Gaudette and provides no explanation or case law to support the District Court's dismissal of Gaudette's disparate treatment claim under either Gaudette's Original Complaint or his First Amended Complaint. Gaudette knows of no case that requires a plaintiff to remain employed to maintain a disparate treatment claim, especially since *Hamilton* and *Muldrow* both do not require economic damages.

Dkt.22(p.17, citing to both opinions at 144 S.Ct. at 974 and 79 F.4ᵗʰ at 501)

By the District Court failing to provide any legal or factual analyses to support the dismissal of Gaudette's disparate treatment claim and the denial of leave to amend with the First Amended Complaint and an absence of any legal support to either of these actions by the District Court, Gaudette respectfully requests that this Court reverse the denial of leave to amend with the First Amended Complaint, reverse the dismissal of his disparate treatment claim (ROA.331-348.GRE7.), and remand this claim back to the District Court.

## New Century's Brief Continues Its Pattern of Misstating Gaudette's Pleadings

Most, if not all, of New Century's arguments against Gaudette's claims in this case are based on misrepresentations of Gaudette's plead allegations,[14] rather than using the complete list of Gaudette's pleadings[15] viewed in the totality of the circumstances. Rather than address this identified source of error in the dismissals on the pleadings in this de novo appeal, New Century merely doubles down on its misrepresentations of Gaudette's pleadings. *Id.* Having followed this course of action thus far, it is not surprising that New Century's brief fails to respond to these criticisms from Gaudette against not only New Century, but also the Report and Recommendation, and by reliance, the District Court.

---

[14] Dkt.26(p.1,4,6,11,40,46,51)
[15] Dkt.22(pp.29-30)

Gaudette respectfully asserts that the District Court cannot avoid a finding of error when the District Court conducted a de novo review of a dismissal on the pleadings, wherein the Plaintiff is supposed to have more protections and deference than at any other time in the litigation process, yet it dismisses claims without considering all of the allegations and all of the reasonable inferences from a totality of the circumstances and without recent Supreme Court precedent; even though the plaintiff is raising the issue of misrepresented pleadings and providing an account of same.[16]

Gaudette is hopeful that this Court will see his allegations, considered together completely, and allow him the right to pursue his claims through the discovery process to develop these claims and gain answers to why New Century chose to lie and deny the discriminatory conduct that occurred rather than to simply investigate, discipline, communicate its intolerance for such conduct in the future, apologize to Gaudette, and assure Gaudette that he, and all employees, will be protected and that such conduct will not occur again without immediate action. Not one of those actions took place, much less all of them. ROA.7-14, ROA.331-347.GRE.Tab7, and Dkt.22(pp.29-30)

Instead, New Century's brief mentions only portions of Gaudette's allegations.[17] For example, New Century misstates that Gaudette

---

[16] Gaudette complained about misrepresented allegations throughout this process. See Dkt.22(pp.8,13-14,18,22,24,26,28-32,42,46-9,52-3), Dkt.23- ROA.350,359,365-66,368,370.GRETab6. and Gaudette's pleadings have been reviewable and referred to by Gaudette: ROA.7-14, Dkt.22(pp.4,10-11,16,29-31,34,43-45,48), Dkt.23-ROA.351-52,364-65,370.GRETab6.

[17] To be clear, Gaudette's criticism includes New Century refusing to consider all of Gaudette's pleading in both the Original and the First Amended Complaint.

complains of only a "single isolated incident," "co-workers laughed," and that "New Century management failed to take action during the meeting and for a few days afterward."[18]

Gaudette's pleadings that were repeatedly ignored by New Century, the Report and Recommendation, and the District Court include seventeen (17) bulleted plead facts[19] that Gaudette has in his First Amended Complaint and copied verbatim in his brief and that he asserts support his four claims enough to meet the minimal pleading standard to allow Gaudette the opportunity to pursue his claims through discovery in this case.

Gaudette asks that this Court compare Gaudette's list of seventeen (17) ignored plead facts[20] to the three facts[21] that the Report and Recommendation,[22] and by extension, the District Court,[23] stated that they considered to be Gaudette's allegations when finding that Gaudette had not provided enough allegations to meet the pleading standards for his four claims, even with the recent *Hamilton* and *Muldrow* opinions. Gaudette would respectfully request that this Court find the stark and unexplained contrast another source of error by the

Gaudette maintains that the Original Complaint sufficiently plead his four causes of action. Gaudette focuses on relying on the First Amended Complaint because this is a second de novo review and the First Amended Complaint has even more detail than the Original Complaint which will assist those reviewing Gaudette's claims to have a better understanding of them than they would with only the Original Complaint.

[18] New Century's misrepresented statements of Gaudette's allegations in his pleadings can be found throughout its brief. See Dkt.26(p.1,4,6,11,40,46,51)

[19] Dkt.22(pp.29-30)

[20] Dkt.22(pp.29-30)

[21] Dkt.22(pp.29)

[22] ROA.260.GRE5.

[23] ROA.395-397.GRE4

District Court justifying reversal and remand of the denial of leave to amend and dismissals of all four claims.

Gaudette also highlights the fact that both the Report and Recommendation and the District Court also failed to consider all of Gaudette's allegations contained in his Original Complaint with the relevant and meaningful fact to assist this Court with finding error that the ignored paragraphs from the Original Complaint were prefaced with the following language:

> "**To make matters worse and thus solidify the continued and irremediable existence of a hostile work environment** for Gaudette …" (**emphasis added**). Dkt.22(pp.31-32, citing to ROA.10 (¶¶17-19)) *Cf.* ROA259.GRETab5

Given these stark and telling comparisons of the limited pleadings considered compared to the substantial and relevant pleadings available for consideration yet ignored, Gaudette respectfully requests that this Court find error, reverse the denial of leave to amend with the First Amended Complaint, reverse the dismissal of each of Gaudette's four claims, and remand those claims to the District Court.

## Gaudette's Pleadings Sufficiently Support His Hostile Work Environment and Constructive Discharge Claims, Especially in Light of *Hamilton* and *Muldrow*

Had Gaudette only plead "a single incident" of a discriminatory joke with some "laughter" and management's failure to react to the discriminatory conduct, Gaudette would understand a dismissal of a claim for hostile work environment as being below the scope of

misconduct that the statute and precedents were not created to protect against. That is not what Gaudette forth for relief.

Gaudette was saddened by the actions of his co-workers derisively ridiculing him, a medical professional engaged in the very serious work of caring for the dying through hospice care. What made Gaudette recognize the hostile environment, within which he could not remain for his own safety and professional well-being, was New Century's decisions, as plead in his Original Complaint and First Amended Complaint of a work place permeated with a management team that chose to lie to Gaudette rather than protect him, to allow discrimination rather than eliminate it, to enlist co-workers to join in the lies rather than in telling the truth or holding the discriminatory actors accountable; a workplace that no one would want to be in or remain in. ROA.7-14 and ROA.331-347.GRETab7

No one should be expected to work for and with people and organizations that have confirmed that they will not be truthful and will engage in derogatory comments and interactions against you behind your back. To be clear, at this point, this is what Gaudette knows to be true without having the had the benefit of discovery thus far. *Id.*

New Century would have this Court tell Gaudette that he should ignore the totality of the circumstances he experienced and stop seeing the "mountain" of ridicule, pain, betrayal, collusion, and dishonesty in front of him and instead recognize it as merely a "molehill" of an, at most, meaningless jest in bad taste, if even that, since "nothing happened" according to New Century. New Century is demanding that

Gaudette go through this transformation without the benefit of his right to a legitimate legal review. Gaudette brings this appeal to avoid that result and obtain at least his right to seek justice.

Gaudette sufficiently argued that his pleadings when viewed completely, under the correct standard of review adequately support his hostile work environment and constructive discharge claims for such cases (i.e., not sexual harassment or class action cases as used in error by the Report and Recommendation and District Court in this matter). Based upon New Century's brief, Gaudette does not see a need to offer any additional argument under the current pleading standard.

As such, Gaudette respectfully requests that this Court reverse the dismissals of Gaudette's hostile work environment and constructive discharge claims and remand them to the District Court.

### Gaudette Advocates For the Application of *Hamilton* and *Muldrow* to Hostile Work Environment and Constructive Discharge Complaints In Specific Circumstances in Keeping With Established Precedents

Gaudette does not argue that *Hamilton* and *Muldrow* have been applied or already apply to hostile work environment and constructive discharge claims.

Gaudette advocates that *Hamilton* and *Muldrow* should apply to these claims too, under certain circumstances, given the relative similarities of the claims with disparate treatment claims (i.e., under the same statute, involving issues of disparate treatment, and involving

the denial to plaintiffs of their terms, conditions, and privileges of employment).

*Hamilton* and *Muldrow* are significant opinions because:

- they both lowered[24] the burdens that courts had created without any statutory basis requiring those higher burdens. *Id.*
- the opinions explained that the phrase "terms, conditions, and privileges of employment" in the proscripted actions portion of the statute expanded and broadened the protections for employees instead of restricting them, which had been the trend, again for decades without any statutory pressure/authority to do so.[25]
- their analyses were only under claims of disparate treatment which means that it was only analyzing claims against the employer's actions with employer liability and not the actions of co-workers since disparate treatment claims can only originate from the acts of employers according to Title VII[26] given that co-workers have no power or authority over any of the proscripted actions listed in the statute. *Id.*

This is where Gaudette's argument originates that it makes sense to apply *Hamilton* and *Muldrow* to hostile work environment and constructive discharge claims in certain circumstances. As argued in his opening brief, Gaudette identified that hostile work environment and constructive discharge claims are brought for illegal actions taken by employers, co-workers, or a combination of both against plaintiffs. Dkt.22(pp.35-41) Since all causes of action brought under Title VII are only actionable against the employer, the Courts developed tests to establish reasonable employer liability to avoid an employer from being

---

[24] Perhaps more accurately described as eliminating non-statutory-based elevated burdens that had been in place for decades. *Muldrow*, 144 S. Ct. at 975 and *Hamilton*, 79 F.4th 497
[25] 144 S.Ct. at 974.
[26] Title VII, 42 U.S.C. §2000e-1 and §2000e-2.

held liable for something that it did not know about or had not had the reasonable opportunity to remediate. Some of the common tests developed by the courts to determine employer liability include: whether the employer "knew or should have known," "took reasonable action to address the illegal conduct," "failed or refused to act," etc… Once the employer's knowledge and actions, or lack thereof, are determined, the employer's liability is reasonably known.

Here is where the hostile work environment claims begin to resemble the disparate treatment claims just before *Hamilton* and *Muldrow* were handed down finding that the heightened burdens were inappropriate. That is, for decades disparate treatment claims required heightened criteria of "material" or "substantial" harm much like hostile work environment claims currently require "severe" or "pervasive" harm for a plaintiff to be allowed access to the courts. However, *Hamilton* and *Muldrow* removed those significance tests for disparate treatment claims because there is no statutory requirement that a plaintiff need to establish some heightened harm to seek justice from a discriminating employer.

Like with disparate treatment claims, if the liability of the employer is known (i.e., the employer was the source (or one of the sources) of the harassing conduct; the employer was aware of the harassing conduct and failed or refused to take action; or the employer should have known of the harassing conduct), then there is no reason to force the employee to suffer a heightened harm to gain access to the courts.

The hostile work environment test used to determine is a harm constitutes a violation of a term, condition, or privilege of employment

through language like "severe or pervasive", are only justifiable as mechanisms to insure employer knowledge and therefore liability. These terms or tests using "severe or pervasive", are not justifiable when used as ways to ensure heightened harm against the plaintiff to qualify as having violated a term, condition or privilege of employment in light of the holdings in *Hamilton* and *Muldrow* rendering such tests illegal when the employer is responsible for the violation of or denial of a term, condition, or privilege of employment. There is no statutory requirement for plaintiffs to suffer heightened harm to have access to the courts since *Muldrow* held that "[t]he discrimination is harm," 144 S.Ct. at 980, and eliminated significance tests. 144 S.Ct. 972

That is, just like in *Hamilton* and *Muldrow* there used to be heightened burdens in disparate treatment claims just like exist currently in hostile work environment and constructive discharge claims to determine whether the terms, conditions, and privileges of employment are at a sufficiently adverse or heightened level of harm for a plaintiff to qualify for access to the courts. Now that *Hamilton* and *Muldrow* have ruled that significance tests are statutorily improper for disparate treatment cases (i.e., when the employer is responsible for causing the harm), it is equally improper to require a heightened measure of harm to the plaintiff to bring a hostile work environment or a constructive discharge case when the employer is the responsible party for a violation of the terms, conditions, or privileges of employment as defined by *Hamilton* and *Muldrow*.

Therefore, in this case, where according to Gaudette's pleading (taken completely and viewed from a totality of the circumstances) New

19

Century, through multiple managers' decisions to lie and deny that discrimination had occurred, pressure another gay man to resign after he complained of the discrimination, refuse to investigate or take any action against the discrimination and enlist multiple employees to join New Century in lying to Gaudette denying the discriminatory conduct occurred,[27] there is no question that New Century not only knew of the discriminatory misconduct, but New Century actually drove the hostile work environment by not only refusing to take action to rectify the discriminatory behavior but by making it worse by lying and trying to hide it with co-workers and managers such that Gaudette would have no ability to feel safe or protected from continued or further discriminatory mistreatment.

In light of *Hamilton* and *Muldrow*, there does not appear to be any reason under the statutory language or under the judicially developed hostile work environment claims to retain a heightened bar or test to determine whether there is a violation of a term, condition, or privilege of employment when the employer is responsible or partially responsible for creating or maintaining the hostile work environment under Title VII.

In short, when the employer is involved in the harassment or creation and maintenance of the hostile work environment because of a protected characteristic, there is no legal basis to require that the plaintiff have suffered more than a disparate treatment plaintiff to obtain protection and justice under the statute.

---

[27] Dkt.22(pp.29-30)

Therefore, Gaudette respectfully requests that this Court extend the application of the removal of a heightened or measured harm under *Hamilton* and *Muldrow* to hostile work environment claims when the employer participated in or knew of the harassing conduct and did not reasonably act to stop it once it knew of the discriminatory misconduct. Gaudette also respectfully requests that this Court reverse its dismissal of this claim and remand it to the District Court.[28]

Now, with respect to constructive discharge, Gaudette acknowledges that it is a distinct claim due to the imputed termination attributed to the employer following an employee's decision to leave employment with the employee's motivation for leaving being the open question.

Because of that imputed penalty on the employer, it makes sense that there be an added criteria to the test to establish a viable and fair claim for the employer being held to account for a justified reason and also fair for the employee so they are not required to remain in an unacceptable employment environment after realizing that they are suffering a violation of their rights under the statute.

As argued by Gaudette in his opening brief, a fair test to both employer and employee would be, "would a reasonable person remain employed under those circumstances."[29] Gaudette advocates that the current test using the phrase "feel compelled to resign" places an

---

[28] To be clear, as in this case, where the employer has lied and knowingly and falsely denied the existence of the discriminatory conduct, the test is already met since New Century both participated in the creation and maintenance of the hostile work environment and refused to fix it thus foreclosing any need to provide New Century with an opportunity to remediate what it has falsely represented as having never occurred.

[29] Dkt.22(pp.45,48)

unreasonable and heightened component that unjustifiably transgresses on fairness of the test to the employee, compliance with the statutory requirements, and compliance with the holdings in both *Hamilton* and *Muldrow* that found such heightened criteria judicially and statutorily unjustified.

Therefore, Gaudette respectfully requests that this Court hold that *Hamilton* and *Muldrow* should be applied to constructive discharge claims with the addition of an extra criteria to the hostile work environment test, "would a reasonable person remain employed under those circumstances" and to reverse the dismissal of this claim and remand it to the District Court.

In the alternative, Gaudette would request that the Court reverse the dismissals of both of these claims and remand them to the District Court without ruling on the application of *Hamilton* and *Muldrow* until the record is more fully developed and ripe for review. Gaudette believes that there is no reason to wait given the fact that is purely a question of law and not application of law to facts, such that there is no productive reason to put off ruling on this issue.

## Retaliation

New Century suggests that a *quid pro quo* allegation can only relate to a sexual harassment claim, without citing to any case that stands for that proposition.[30] Gaudette acknowledges that the term *quid pro quo* is a familiar term in sexual harassment cases where it is used as

---

[30] Dkt.26(p.47)

shorthand for a circumstance like an offer of position, status, or money in exchange for sex. However, the term itself is merely a Latin term for an exchange of something for something.[31] New Century has provided no legal basis to restrict it to only sexual harassment claims or restrict it from use in this retaliation claim.

In this case, Gaudette pleads that New Century made a threat to Gaudette to make a false report of a knowingly false HIPAA violation to the Texas Board of Nursing (threatening Gaudette's license and having to go through responding to such an allegation) as a means of manufacturing some value to exchange with Gaudette to pressure Gaudette to refrain from filing his discrimination complaint with the EEOC as a *quid pro quo* exchange with New Century's agreement to not file a HIPAA violation with the Texas Board of Nursing and thereby "peacefully coexist" with each other. ROA.67.NCRE.Tab3 Gaudette pleads that there is no other reasonable meaning that can be derived from a false allegation of a HIPAA violation and use of the term "peacefully coexist" between them. *Id.* Gaudette also pleads that this would dissuade a reasonable person for proceeding to file a complaint of discrimination against New Century due to the potential hassle and harm even a false report could cause Gaudette.

Strangely, New Century raised an unperfected issue of whether Gaudette engaged in a protected activity when neither the Report and Recommendation nor the District Court made any finding in that regard and New Century did not file an appeal or cross appeal, not to

---

[31] Black's Law Dictionary lists "Quid pro quo" as, "What for what; something for something. Used in law for the giving one valuable thing for another…"

mention the absurdity of the suggestion that Gaudette did not engage in a protected activity given the resignation letter from Gaudette (ROA.65.NCRETab2) specifically mentioning discrimination and the acknowledgement from New Century management's communications regarding its false denials that any discrimination occurred.

Gaudette respectfully requests that this Court reverse the dismissal of this claim and remand it to the District Court.

## CONCLUSION

For these reasons, Gaudette respectfully requests that this Court reverse the District Court's denial of leave to amend his complaint with the First Amended Complaint and the order of the District Court dismissing each of the four claims and remand each of the four claims in this case to the District Court by finding on *de novo* review that Gaudette's First Amended Complaint adequately pleads his claims for disparate treatment discrimination, hostile work environment, constructive discharge, and retaliation against New Century. ROA.331-348.RE7. Gaudette also respectfully requests that this Court apply or reconcile the holdings in *Muldrow* and *Hamilton* to Gaudette's disparate treatment, hostile work environment, and constructive discharge claims, and such other and further relief that this Court determines justice and equity so require.

Respectfully submitted,

  s/ *Robert Stephen Notzon*
Robert Stephen Notzon
The Law Office of Robert Notzon

24

Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
Robert@NotzonLaw.com
(512)-474-7563
COUNSEL FOR APPELLANT

**CERTIFICATE OF SERVICE**

I certify the service of this document by ECF on December 13, 2024, upon:

Sara E. Janes
sjanes@wshllp.com
Kevin Mullen
kevin@themullenfirm.com

   _s/ Robert Stephen Notzon_
   Robert Stephen Notzon

**CERTIFICATE OF COMPLIANCE**

I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; and (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1.

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because Microsoft Word reports that it contains 6,145 words, excluding the material not counted under the rule, and complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it was prepared in Microsoft Word using a Century Schoolbook proportionally spaced typeface (14-point in the brief and 12-point in the footnotes).

   _s/ Robert Stephen Notzon_
   Robert Stephen Notzon